HERBERT HAROLD VREELAND, JR. *vs.* JACOB G. IRVING
ET ALS.

Third Judicial District, Bridgeport, October Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and GAGER, Js.

A deed conveying to the plaintiff the real estate and machinery of a manufacturing corporation, purported to include its "equipment" also, but the votes passed by the directors, who were acting as trustees under the statute (Public Acts of 1903, Chap. 194, § 30) in winding up the affairs of the company, as well as the contract made with the plaintiff for the sale of the property, limited the subject-matter of the sale to the real estate and machinery, and the word "equipment" was inserted in the deed without warrant. In an action in the nature of trover against the directors and trustees for the alleged conversion of a large number of metal moulds, it was *held:*—

1. That the plaintiff acquired no title to these, inasmuch as those who assumed to transfer them had no corporate authority to make such a conveyance.

2. That such lack of authority might be shown by the defendants after the plaintiff had introduced the deed as the source of his title; and that the rule (Practice Book, 1908, p. 31, § 609) which required a defendant, if he intended to controvert the execution or delivery of any written instrument sued upon, to do so specifically in his answer, had no application to the situation, since the complaint did not count upon or refer to the deed, but merely alleged the plaintiff's ownership of the moulds and their conversion by the defendants, and therefore the question of corporate authority might properly be raised under the defendants' general denial.

In the absence of all the evidence, this court can merely ascertain whether the ultimate conclusions of the trial court are legally consistent with the subordinate facts set forth in the finding, and whether or not such conclusions were controlled by any erroneous view of the law.

Argued October 31st, 1916—decided January 5th, 1917.

ACTION to recover damages for an alleged wrongful sale and conversion of certain metal moulds and designs, brought to and tried by the Superior Court in Fairfield County, *Bennett, J.*; facts found and judgment

Vreeland *v.* Irving.

rendered for the defendants, and appeal by the plaintiff. *No error.*

*Eugene C. Dempsey,* for the appellant (plaintiff).

*J. Moss Ives,* with whom was *George Wakeman,* for the appellees (defendants).

RORABACK, J.  This is an action to recover damages for the alleged conversion of 11,610 pounds of metal moulds and designs, theretofore used by the Brainard and Wilson Company, a joint-stock corporation organized under the laws of the State of Connecticut, having its office and principal place of business in Danbury.  The answer was a general denial.

The Superior Court has found that the defendants are directors of the Brainard and Wilson Company. At the time of the alleged conversion, these directors were acting as trustees in pursuance of the provisions of the statute laws of this State relating to the voluntary dissolution of corporations.  Public Acts of 1903, Chap. 194, § 30.  On September 3d, 1915, prior to the alleged conversion, at a meeting of the directors when they were acting as trustees for the corporation, the following vote was passed: "Motion made, seconded and carried that the president and treasurer be and they are hereby authorized to sell the buildings, machinery and real estate of the Brainard & Wilson Corporation, located on Thorpe Street, at a price not less than $5,000."  On the 18th day of September, 1915, the defendants Jacob G. Irving and Thomas C. Millard, president and treasurer, respectively, duly authorized by this vote, entered into an agreement with the plaintiff to sell to him the buildings, machinery and real estate of the corporation.  The moulds and designs for the conversion of which the plaintiff brings this

suit were not, either by the intention of the parties or by the terms of this agreement, included in this sale. At a meeting of the directors, acting as trustees, held on September 11th, 1915, the following resolution was adopted: "Resolved, That the president and treasurer be and they are hereby authorized and empowered to execute and deliver a deed of the real estate belonging to said corporation, located on Thorpe Street, in Danbury, in accordance with the agreement heretofore entered into with H. H. Vreeland, Jr., and to do everything necessary or in accordance to the carrying this agreement into effect." On September 25th, 1915, Jacob G. Irving and Thomas C. Millard, president and treasurer, respectively, assuming to act under the authority given to them by the resolution of September 11th, 1915, executed and delivered the deed upon which the plaintiff now relies.

The authority of the president and treasurer to negotiate the sale of the property of this corporation pursuant to the directions contained in the resolution of September 3d, 1915, was limited to the property described in that resolution. This agreement for the sale of this property to the plaintiff, executed by the president and treasurer, was made in compliance with the authority and direction conferred upon them by the resolution of September 3d, 1915, and contained no agreement to sell any "equipment" to the plaintiff. No authority was given the president and treasurer under the resolution of September 3d, 1915, to sell or dispose of any "equipment" belonging to the corporation. The defendant Ives was the scrivener who drafted the deed. He incorporated therein the word "equipment" at the special request of the plaintiff, without the knowledge or direction of the other directors and trustees, except that the defendant Irving who noticed the word "equipment" in the deed, made objection

to its presence. The personal property in question, to wit, 11,610 pounds of metal moulds, was described and included under the word or term "equipment." This property was a part of the equipment of the Brainard and Wilson factory.

After the plaintiff had entered into possession of the real estate conveyed to him under the deed, the defendant Irving, acting in behalf of the trustees, obtained permission from the plaintiff to store certain material then on the premises, consisting of brass, copper wire, tubing, materials and 11,610 pounds of metal moulds, including the property for the conversion of which the plaintiff brings this action, in one of the buildings located on these premises. The plaintiff at once took possession of the premises described in the deed. These metal moulds were located in one of the buildings described therein. On the 22d day of October, 1915, the defendants sold the property in question for $1,277.10 to the Rogers Silver Plate Company of Danbury, and the purchaser took possession of it. The defendant Irving, with the consent of the trustees, acted as general manager in winding up the affairs of the corporation. He had exercised authority to sell and dispose of personal property of the corporation for a fair and reasonable consideration, but he had no authority to dispose of the property of the corporation without a consideration therefor.

The deed to the plaintiff contained this recital: "That The Brainard & Wilson Company, Inc., a joint stock corporation organized under the laws of the State of Connecticut, and located and having its principal place of business in Danbury, Fairfield County, Connecticut, acting herein by Jacob G. Irving, its president, and Thomas C. Millard, its treasurer, both of said Danbury, hereunto duly authorized by vote of the directors and trustees of said corporation, acting as

trustees of said corporation, under the statute laws of the State of Connecticut." The deed was signed as follows: "The Brainard & Wilson Co., Inc. (L. S.) By Thomas C. Millard, Treasurer, (L. S.) Jacob G. Irving, President. (L. S.)."

It appears that one of the reasons for the introduction of this deed in evidence by the plaintiff was to show that his grantors were duly authorized to make and execute this document. In this connection the record discloses that the plaintiff produced as his witness Jacob G. Irving, one of the defendants, who upon his direct examination testified that he was associated with Thomas C. Millard, J. Moss Ives and George Wakeman, acting as trustees to close up the affairs of the Brainard and Wilson Company; and that he signed this deed. The deed was then admitted in evidence and read by counsel for the plaintiff.

Upon cross-examination of this witness the following occurred: "Q. This resolution says that you were to execute and deliver a deed of the real estate belonging to the corporation located on Thorpe Street in Danbury, in accordance with the agreement heretofore entered into with H. H. Vreeland, Jr. Was there an agreement entered into by yourself acting as president and Mr. Millard as treasurer with H. H. Vreeland, Jr.? A. There was." The witness then stated that this agreement was the one executed in pursuance of the authority given under the vote of September 3d, 1915. All this evidence was admitted without objection upon the part of the plaintiff, but when this agreement was offered in evidence by the defendants, the plaintiff objected to its admission. The following statements, made during the discussion of the plaintiff's objection as to the introduction of this writing in evidence, are of importance in passing upon the controlling questions presented by this appeal: "Mr. Dempsey:

Yes, I object. If there was an agreement that preceded this deed, I object to it, if it pertains to this property that is being sold. The Court: Here is a vote authorizing these parties to sell in conformity with an agreement. Now here is the deed which, as far as the court can see, was intended to be in conformity with the agreement, or else it goes outside of the agreement and was without authority. It seems to me that the agreement is necessarily here, certainly on cross-examination as to the authority to execute the deed under which you claim. On cross-examination in regard to that authority it is admissible as one of the circumstances surrounding it, to interpret it; and, on the other hand, as showing the limitation of the agent's authority. Mr. Dempsey: That may be true, but is it cross-examination of any material question that I inquired of this witness, and isn't it a part of the defendants' case? The Court: No; you put in a deed which you say was given with authority. They have a right to cross-examine as to the authority of the agent to execute that deed. Mr. Dempsey: I admit that is true."

As stated, the answer was a general denial. The plaintiff now contends that the trial court erred in holding that the question of authority, upon the part of the president and treasurer of the corporation, was included under this issue. Our Practice Act provides that if the defendant intends to controvert the execution or delivery of any written instrument sued upon he shall raise such question specifically in his answer. Practice Book, 1908, p. 31, § 609.

This principle is not, as the plaintiff claims, applicable to the present situation. The cause of action stated in the plaintiff's complaint is in the nature of an action of trover. It simply alleges the plaintiff's ownership of the property in question and the conver-

sion of it by the defendants. No reference is made in the complaint to any deed or contract as a source of the plaintiff's title. The question of the grantors' authority was not referred to until the plaintiff was introducing his evidence during the trial of the case, when he produced the deed. Under such circumstances, an answer setting forth a lack of authority upon the part of the grantors to this deed would have been frivolous pleading. The defendants had no opportunity of properly raising the question of authority until after the deed had been placed in evidence by the plaintiff. This branch of the case was tried upon the evidence without reference to any allegations contained in the pleadings of either party. It is stated in the deed that the grantors were "duly authorized by vote of the directors and trustees of said corporation." The defendants, after the plaintiff produced this deed, were entitled to show, by the votes which were passed by the directors and trustees and the written agreement made between the parties, the authority of those who assumed to transfer this property to the plaintiff. It would have been manifestly unjust to allow the plaintiff to obtain in this way the benefit of the recitation in the deed,· that his grantors were duly authorized by vote to make this transfer, and then deny the defendants the right to meet this proposition upon cross-examination.

It is hardly necessary to say that there was no error in the admission of the votes of September, 1915, and that the objection to the admissibility of this written agreement was properly overruled. After its admission the court below, in connection with other evidence, had before it the votes of September, 1915, the written agreement and the deed given to the plaintiff. These writings, under the recitals set forth in the deed, should be treated as one transaction. Regarding them as

such, it is apparent that the plaintiff cannot sustain his contention as to the ownership of this property, although the deed purported to convey the "equipment" of this manufacturing plant.

It is obvious that the power to sell was a special one to be exercised only when $5,000 could be obtained for the property to be sold, which the court below has found did not include the moulds and designs for which the plaintiff seeks to maintain his action. The evidence is not before us. We are simply to ascertain whether the ultimate conclusions of the trial court are legally consistent with the subordinate facts set forth in the finding, and whether or not the court in its conclusions was controlled by any erroneous view of the law.

In this transaction the president and treasurer, who executed this deed, were not acting as agents for the transaction of the general business of the corporation. The extent of their power to bind the corporation, as recited in the deed, was limited to the language contained in the votes of September, 1915. Of this the plaintiff was notified by the provisions contained in his deed from the corporation which he accepted.

If it appeared, or could be inferred, that the plaintiff had not received all that he bought and paid for, this court would be very slow in reaching the conclusion that he had no remedy. As stated, it appears that the contract upon which the plaintiff now relies was wholly unauthorized by any corporate action of the Brainard and Wilson Company. It is also apparent that the corporation never intended to sell, or supposed that it had sold, this "equipment" to the plaintiff. Neither is it claimed that the plaintiff ever gave any consideration for this property.

The record is also barren of any suggestion that the corporation ever recognized such a transaction as the

one upon which the plaintiff now bases his cause of action. The contrary appears, since it is found that after the plaintiff had entered into the possession of the real estate, which it is conceded was conveyed to him, the trustees of the Brainard and Wilson Company obtained permission from him to store this identical property in buildings located upon the real estate which he had purchased of the corporation.

Upon the facts found the judgment for the defendants was inevitable.

There is no error.

In this opinion the other judges concurred.