THE YALE CO-OPERATIVE CORPORATION v.
BERNARD S. ROGIN

MALTBIE, C.J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 1—decided May 1, 1947

*Julius B. Schatz,* with whom were *Arthur D. Weinstein* and, on the brief, *Joseph P. Kenny,* for the appellant (defendant).

*Catherine J. Tilson* and *Frank E. Callahan,* with

whom was *Frederick H. Wiggin,* for the appellee (plaintiff).

ELLS, J. The Yale Co-operative Corporation is located in New Haven and has been continuously engaged in the business of buying merchandise and selling it at retail since its organization in 1892. During that period it has occupied a store at various locations near the geographical center of Yale University. The store has been known as the "Yale Co-op" since 1899 and has been so advertised for many years. The annual volume of its business is about $500,000. Approximately 40 per cent of its retail trade is made up of the sale of books, including dictionaries. Its principal customers are the Yale students and faculty in New Haven and alumni of Yale University in New Haven and throughout the United States. It brought this action to enjoin the defendant from doing business under the name "Yale Co-op Books" and from selling books labeled with an abbreviation or contraction of its name. The trial court issued an injunction, and the defendant has appealed.

The defendant's first claim is that the plaintiff is not a corporation and does not have capacity to maintain the action. The articles of association show that the plaintiff was organized under the provisions of § 1907 of the General Statutes of 1888, which permitted the organization of a corporation without capital stock "for any lawful purpose," and which provided that it might hold real and personal estate the annual income from which should not exceed $5000. The articles of association were duly filed in the office of the secretary of state and in the town clerk's office at New Haven. The statutes now provide that corporations without capital stock may not

be organized for the purpose of carrying on a mercantile or manufacturing business or one solely conducted for profit, but the limitation as to the amount of property which may be held has been removed. General Statutes, Cum. Sup. 1935, § 1402c. Upon the basis of evidence that the plaintiff has exercised corporate franchises, has maintained a corporate existence, has duly elected directors and officers throughout the period, and has continuously engaged for fifty-three years in the business for which it was organized, the court properly found that it was at least a de facto corporation; *DiFrancesco* v. *Kennedy,* 114 Conn. 681, 687, 160 A. 72; and as such could maintain the present action against a person in the defendant's situation. 8 Fletcher, Corporations (Perm. Ed.) § 3857; see 13 Am. Jur. 203.

The trial court found that the defendant used the name "Yale Co-op" on various dictionaries which he published and sold; that he was preparing to publish and sell a series of books under the name "Yale Co-op Classics"; that without the plaintiff's knowledge he had filed in the United States Patent Office petitions to register trade-marks bearing the name "Yale Co-op" or "Co-Y-op" and upon the granting of the petitions had registered the trade-marks in the office of the secretary of state in Hartford; that in his sworn statement which accompanied the petitions he stated that he was the owner of the trade-marks sought to be registered and that no other person, firm, corporation or association had the right to use the trade-mark in the United States; that the defendant was using the name "Yale Co-op Books"; that he had established offices on the third floor of a building on College Street in New Haven under the name "Yale Co-op Books," which name appeared on the office door

and in the building directory; and that he was using the words "Yale Co-op Books" on his business stationery and checks. The defendant has not questioned this finding of facts. He claims the right to use the name "Yale Co-op" on the dictionaries and the classics by virtue of contracts with the plaintiff, and seems to contend that the other uses of the name by him enumerated above are justified by and flow from those contracts.

The claim as to the classics requires but brief discussion. The court found that the defendant suggested the publication of certain classical works under the name "Yale Co-op Classics" and tried to persuade the plaintiff to grant him the use of its name in this connection but that no agreement was ever made, nor was any permission to use the name ever given. There is evidence to support the finding, and it must stand.

The court found that in 1941 the parties entered into an agreement whereby the defendant was given the right to use the name "Yale Co-op" on a dictionary which was to be known as Webster's Encyclopedic Dictionary and which was to be published by the defendant; that no time was fixed for the performance of the agreement; that the defendant arranged for the publication of three types of dictionary, in accordance with the agreement, and sold large quantities of them; and that early in February, 1943, the parties terminated the contract by mutual agreement. A principal claim of the defendant is that the court erred in finding a rescission of the contract.

The parties to this contract could as validly agree to rescind it as they could agree to make it originally. *Savage Arms Corporation* v. *United States,* 266 U.S.

217, 45 S. Ct. 30, 69 L. Ed. 253; 12 Am. Jur. 1011. "Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties." 6 Williston, Contracts (Rev. Ed.) p. 5171; *Osborn* v. *Stevens,* 132 Conn. 410, 414, 45 A.2d 160; *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 484, 71 A. 577. The mutual release of obligation under a contract affords sufficient consideration for a rescission. 6 Williston, op. cit., p. 5170. The question is whether the subordinate facts found by the trial court validly support its finding and conclusion that the contract was terminated by mutual agreement of the parties. The following facts were found and are not subject to correction. Subsequent to the making of the agreement, the defendant, in accordance with it, published and sold three kinds or types of Webster's dictionaries with a "Yale Co-op" binding. Differences of opinion developed and the plaintiff sought a new contract. Proposals and counter proposals were made and discussed. A draft of a new contract was proposed by the plaintiff's attorneys and sent to the defendant. No reply was received, and the plaintiff pressed for an answer. In February, 1943, the defendant called at the plaintiff's store and informed its manager, who had conducted the negotiations and was authorized to act for the corporation, that he would not sign the proposed agreement; that because of a shortage of material and labor it would be impossible to publish any more dictionaries. The parties understood and treated this refusal as a termination of their existing agreement and of the negotiations for a new one, and there was no further communication between them. The agreement of 1941 could not continue to be op-

erative unless dictionaries of the types agreed upon could be published. No more dictionaries were thereafter furnished by the defendant to the plaintiff as provided for in the contract. Despite his statements the defendant continued to publish the dictionaries during the year 1943 and to use thereon the abbreviated name of the plaintiff, and he extended the use of the plaintiff's name by putting it upon other and inferior dictionaries. He thereafter engaged in the practices already stated, which, briefly summarized, are that during the latter part of the year 1943 he started using the name "Yale Co-op Books" and established offices under the name "Yale Co-op Books," this name appearing on his office door and in the building directory. He began to use the words "Yale Co-op Books" on his business stationery and checks. He obtained and registered the trademarks. The plaintiff did not know of any of these acts.

In finding a termination of the contract of 1941 by mutual assent of the parties, the court did not rely entirely upon the statements made by the defendant in February, 1943, but decided that those statements, the failure of the parties to communicate with each other thereafter and the subsequent activities of both parties all showed that they understood that the 1941 agreement had come to an end. The subsequent conduct of the defendant is significant in that it indicated that he was not proceeding under the agreement. With one exception the acts which he engaged in were wholly outside the scope of the contract and were an indication that he was not even pretending to proceed under it. It is true that he continued to publish the three dictionaries during the remainder of 1943, but he did this entirely without the knowl-

edge of the plaintiff. At the end of the year he was notified by his publisher that his contract was terminated because of lack of available paper, and no more of the dictionaries were published thereafter.

The defendant contends that there was no assent on the part of the plaintiff to the defendant's alleged offer to rescind. ". . . if either party even wrongfully expresses a wish or intention to abandon performance of the contract, and the other party fails to object, there may be sometimes circumstances justifying the inference that he assents. If so there is rescission by mutual assent. . . . Sometimes even circumstances of a negative character, such as the failure by both parties to take any steps looking towards the enforcement or performance of a contract, may amount to a manifestion of mutual assent to rescind it." Restatement, 2 Contracts, § 406, comment b. We cannot say that the circumstances of the present case did not warrant the court in finding an assent by the plaintiff to the termination of the contract of 1941, which was the only agreement between the parties, and that it was mutually rescinded.

The defendant further claims that the rescission found by the trial court cannot be upheld because the plaintiff did not claim in its pleadings or at the trial that there was a rescission of the contract. The claim appears to be that the defendant pleaded as a special defense a contract made in 1942, a copy of which was attached as an exhibit, as an attempted justification of what he was doing, and that the plaintiff should have affirmatively pleaded a rescission of it. The plaintiff denied the existence of such a contract and the court has not found that it existed. In its claim at the trial the defendant relied upon the contract of 1941. Such justification as there is for

that claim arises out of the denial of the allegation of the complaint that the defendant was not authorized to do business in the name of the plaintiff. As the plaintiff was not relying upon any contract and introduced evidence of its rescission only to rebut this claim, it could have the benefit of that evidence without specially pleading the rescission. *Henault* v. *Papas*, 99 Conn. 164, 167, 121 A. 273; *Vreeland* v. *Irving*, 91 Conn. 272, 278, 99 A. 574.

The next question is whether the acts of the defendant hereinbefore enumerated constitute such unfair competition as to entitle the plaintiff to injunctive relief. "No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived. . . . If the court finds that the effect of appropriation by one corporation of a distinctive portion of the name of another is to cause confusion and uncertainty in the latter's business, injure them pecuniarily and otherwise, and deceive and mislead the public, relief will be afforded. . . . It is not sufficient that some person may possibly be misled but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other." *Middletown Trust Co.* v. *Middletown National Bank,* 110 Conn. 13, 20, 147 A. 22. A mere recital of the unwarranted and unauthorized uses of the plaintiff's name by the defendant, coupled with

the size and national scope of the plaintiff's business, furnishes strong support for a claim for injunctive relief. The decisive factor is a finding by the court of facts which fulfill all the tests and requirements stated in the case cited above. The rule we have quoted applies also to a corporation not organized for pecuniary profit. *Daughters of Isabella, No. 1 v. National Order, Daughters of Isabella,* 83 Conn. 679, 685, 78 A. 333.

The defendant further claims that any injunctive relief granted by the court should be limited to New Haven and its suburbs. The contention is that the right to the exclusive use of a trade-mark only extends to those markets where the trader's goods have become known and identified by the use of trade-mark; that an exclusive user established in a limited territory does not establish a priority to its use in a different area. See Nims, Unfair Competition & Trade-Marks (3d Ed.) p. 763. The answer is found in the finding that the plaintiff's market is among Yale men throughout the United States. It has acquired this market through its contacts over a period of fifty years with Yale students who came from and returned to every state in the Union.

The defendant pleaded estoppel and laches. The court concluded that the plaintiff's conduct has not been such as to give rise to those defenses. We find no error in this respect. Various rulings on evidence are assigned as error. We have examined them and find no prejudicial error.

The injunction is sweeping in its terms. Its purport is that the defendant must not use the plaintiff's name or a colorable imitation of it, such as "Yale Co-op," in connection with the printing, binding, preparation, publication, distribution or sale of any

books or other printed matter, or in connection with the conduct or operation of any business similar to the business of the plaintiff, and described in its articles of association. The defendant has no just cause for complaint. We quote the trial court's language, contained in a paragraph of its finding of facts: "By the acts, representations, suggestions and deceptions hereinbefore described, the defendant is engaged in unfair competition with the plaintiff and is confusing and misleading the public including customers and prospective customers of the plaintiff; and he threatens and intends further to engage in such unfair competition with the plaintiff."

There is no error.

In this opinion the other judges concurred.