14 N.J. Super. 363 (1951)
82 A.2d 434
HARRY FOLSOM, PETITIONER-APPELLANT,
v.
MAGNA MANUFACTURING CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1951.
Decided June 21, 1951.
*365 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Aaron Gordon argued the cause for appellant (Mr. Nathan Rabinowitz, attorney; Mr. Gordon on the brief).
Mr. Isidor Kalisch argued the cause for respondent (Messrs. Kalisch & Kalisch, attorneys).
*366 The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The petitioner appeals from the judgment of the Passaic County Court affirming a judgment entered in the Division of Workmen's Compensation dismissing petitioner's claim for compensation.
The county court judge on November 13, 1950, filed an opinion as follows: "The appeal in the above case is dismissed and the Judgment of Dismissal entered by the New Jersey Department of Labor and Industry, Division of Workmen's Compensation, is affirmed for the reasons set forth by Deputy Director Kerner." In addition the judgment, entered November 21, 1950, recited that the county court "has independently reached the same conclusions as the Deputy Director, and for the same reasons as set forth in the said Determination of Facts and Rule for Judgment of Dismissal filed by the Deputy Director, which moved the said Deputy Director to dismiss, and which for the sake of brevity are here not repeated, but are incorporated therein by reference, (and this court) now determines * * * that the legal evidence adduced does not establish by a fair preponderance that the cerebral hemorrhage was the result of any accident arising out of and in the course of petitioner's employment."
If it be assumed that the statute, R.S. 34:15-66, sanctioned the adoption by the county court judge of the deputy director's conclusions, such is no longer the correct practice following the adoption of Rule 5:2-6. That rule is not involved in this case because it did not become effective until December 7, 1950, several weeks after the entry of the judgment on appeal. However, because of its significance as to the manner of disposition of workmen's compensation appeals in the county courts, we shall avail ourselves of this opportunity to comment upon it.
The rule requires that factual determinations necessary to be made on the appeal are to be made in the form of an independent and original opinion written by the county court judge. This is implicit in the provision that "the court shall prepare and file * * * a determination of facts and *367 judgment." The requirement relates, however, only to factual issues raised by "the points involved in the appeal"; it is as to them that the judge has the duty to set down "the basic reasons for decision." The opinion must also "embody * * * the non-issuable facts necessary for decision on the whole of the issue," but these are arrived at by the filing and service by the parties of statements and counter-statements of such facts in manner prescribed by sections (b) and (c) of the rule. The opinion is to be a separate document and is not to be made part of the final judgment. The final judgment is "entered thereon" in the same manner as in other actions tried in the county court.
The rule perforce makes no longer authoritative the decisions under the former practice holding that the determinations of the former court of common pleas in workmen's compensation cases need not be specific. Dreyfus v. Lutz Co., 6 N.J. Misc. 608 (Sup. Ct. 1928), affirmed 106 N.J.L. 566 (E. & A. 1929); Fontaine v. United Engineers and Constructors, Inc., 12 N.J. Misc. 220 (Sup. Ct. 1934); Charlock v. M.W. Kellogg Co., 4 N.J. Misc. 260 (Sup. Ct. 1926); and see Gianfrancisco v. Public Service Coord. Transport, 11 N.J. Misc. 219 (Sup. Ct. 1933).
The reasons for the provisions of Rule 5:2-6 are obvious. As to factual issues implicated in the points involved in the appeal to the county court, the review by that court is not a hearing upon claimed errors of the deputy director with resultant affirmance, modification or reversal of the judgment entered by him. In other words, the county court does not merely pass upon alleged legal errors. The case is heard de novo by the county court upon the factual matters necessary to decision of the points on appeal, that is, there is a new trial upon such matters, although based exclusively upon the transcript of the record and testimony before the deputy director. R.S. 34:15-66. The judgment brought here for review is not that of the Division of Workmen's Compensation but that entered by the county court. The duty of the county court judge is "to bring a new mind to the *368 consideration of the transcript of the record and testimony in the cause" so far as the same pertains to the points involved in the appeal. Gagliano v. Botany Worsted Mills, Inc., 13 N.J. Super. 1 (App. Div. 1951). The requirement under the rule of an original determination in the form of the county court judge's own written opinion upon the fact and law questions involved in the issues on appeal is in keeping with the spirit and intent of the principle that a "new mind" shall be brought to bear upon the record.
Its value is illustrated by one of the matters argued on this appeal. The carefully prepared determination of the deputy director earned the deserved commendation of the county court judge. Nonetheless, the deputy director fell into legal error in viewing as substantive proof the contents of a statement in evidence offered by respondent to contradict the testimony of petitioner's witness, Clark, who gave respondent the statement. The contents of the statement, while usable on cross-examination to attack Clark's credibility and admissible in evidence for that purpose, were not substantive evidence in the case. Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495 (Cty. Ct. 1950) and cases cited therein. We have concluded that the error did not injuriously affect the substantial rights of the petitioner. We cannot, however, escape the conviction that the county court judge, too, would have detected the error and have given us the benefit of his views had he prepared his own determination upon the facts and law instead of adopting the deputy director's conclusions.
Furthermore, the mandate of the rule is an essential corollary of the practice followed by us not to exercise our power to make independent findings of fact unless we are satisfied that the interests of justice require it and to accord determinative weight in the first instance to the factual findings of the county court. Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950); McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. 1950). That rule of appellate practice was introduced with our new rules of court. The former Supreme Court was *369 required to review questions of fact as well as of law, R.S. 2:81-8, an obligation not laid upon this court because that statute was superseded by Rule 3:81-13 (cf. Rules 1:2-20 and 4:2-6), under which we are empowered to review the facts and make independent findings thereon, but this power is permissive and a litigant may not as a matter of right require our exercise of it. Giacchi v. Richmond Brothers Co., 11 N.J. Super. 76 (App. Div. 1951), on rehearing, 12 N.J. Super. 308 (App. Div. 1951). It is plain that the emphasis implicit in Rule 5:2-6 upon original determinations of the county court of factual issues necessary to decision of the points involved in an appeal to that court is consistent with the larger significance given to the county court's findings reflected in this difference in the character of the review upon factual issues given by this court from that which was required to be given by the former Supreme Court.
The requirement laid upon the county court in no wise, however, relieves the deputy director of his responsibility to make proper findings upon the essential matters to be determined under the claim petition. Such findings are a prerequisite to a valid judgment. Gagliano v. Botany Worsted Mills, Inc., supra; Patton v. American Oil Co., 13 N.J. Misc. 825 (Sup. Ct. 1935), affirmed 116 N.J.L. 382 (E. & A. 1936). The deputy director's findings are part of the record and must be considered by the county court judge in the proper performance of his duty, which includes the giving of "due, although not necessarily controlling, regard to the opportunity of the deputy director to judge of the credibility of witnesses." Donofrio v. Haag Brothers, Inc., supra.
Plainly, the rule implements the statutory scheme to effect expeditious determination of workmen's compensation claims in aid of the beneficial objectives of the legislation. These ends are obviously served when litigants have the benefit of proper original determinations by both the Division of Workmen's Compensation and the county court, that is, findings by the deputy director upon all essentials to be determined under the claim petition, and by the county court judge upon *370 the issues to be resolved in light of the points involved in the appeal before him, which findings by the county court judge, while made with due regard to the findings thereon of the deputy director, nevertheless are the judge's own and truly reflect the bringing of a "new mind" for the consideration of the record and transcript. Too, when both tribunals adequately discharge their respective functions, this court is best able intelligently and properly to deal with the merits of, and finally to dispose of an appeal brought to it. Deficiencies in the record which require remand for correction (see Gagliano v. Botany Worsted Mills, Inc., supra; Patton v. American Oil Co., supra) only serve to defeat the statutory objectives and to increase the costs to litigants.
Neither party has argued that this case should be remanded; rather, at the oral argument both sides requested that we determine the appeal as if the deputy director's findings had been made by the county court judge. As the matter was decided before the effective date of Rule 5:2-6, we yield to the request.
Petitioner was employed by respondent as working foreman and had been engaged for some time in assembling and erecting an annealing oven. One, Gibbons, and one, Clark, worked with him. In the afternoon of November 29, 1946, petitioner sent Gibbons and Clark to the boiler room, some 150 feet distant, to fabricate some hangers upon which to hang pipes. Petitioner continued working in the oven room. Gibbons and Clark testified for petitioner. They said that after they had been working on the hangers in the boiler room for 45 minutes to an hour, petitioner came to the boiler room and asked "how things were going." Clark testified that he replied, "All right. This is the last one.," and that he was going to take the hangers, each of which weighed a pound or a pound and one-half, to the hydraulic press to put a bend in each. Petitioner, according to Clark, said, "I'll take a walk down with you," that petitioner picked up the six or seven hangers and put them on his shoulder, put them right down again and said, "What happened to me?" and *371 complained of a headache. The testimony of Gibbons and Clark was in accord that thereupon petitioner "broke out into a sweat," "discolored," "was blue," "he had big beads of perspiration on him" and complained of headache. The witnesses further agreed that before this occurrence petitioner "looked perfectly natural," "his conversation was natural." The time interval between petitioner's entering the boiler room and the occurrence was very short, "was five minutes at most" according to Gibbons.
Petitioner was taken home and the next day was hospitalized at Paterson General Hospital.
The tentative diagnosis was a possible meningitis. Subsequently it was determined that petitioner had suffered a cerebral hemorrhage, a hemorrhage into the subarachnoid space, with resultant motor aphasia which impaired his ability to speak and to make coherent statements, and some amnesia.
Petitioner, however, did not contend that the hemorrhage resulted from anything which occurred in the boiler room. His claim was premised on an incident which he testified occurred minutes before he went to the boiler room and while he was alone in the oven room. He testified that while working at the oven he was moving an iron rail several hundred pounds in weight and having the appearance of a railroad track rail, when, with one end of it on his shoulder and while stooped over in a squatting position, he "felt as though something busted in my head," "just the top of my head seemed to raise and like water ran all over it on the inside, on the inside it sounded like, and aches"; "My head was aching so bad I didn't know what in the world to do. I went over for help from them fellows * * * in the boiler house * * * from then on I don't remember anything."
Petitioner was suffering from a general arteriosclerotic condition, and hypertension. It does not appear that he was aware of his condition, but one of his doctors testified that he had a pre-existing "advanced arteriosclerosis," "symptoms of heart disease," "involvement of the valves of the *372 heart," not connected with the alleged accident. Petitioner's medical proof, on the hypothesis of the truth of his statement of the occurrence in the oven room, was that "This extra effort induced the rise in blood pressure, maybe 20 or 30 points, and in consequence thereof the weakened blood vessel spurted. Some perforation occurred in that blood vessel, which led to a certain quantity of blood flowing into the surrounding brain tissue. The lesion was on the left side at the base of the brain * * * where the motor and sensory fibers crossed over to the opposite side * * * giving him an anasthesia of the right side * * * and in consequence * * * he has a certain motor weakness. It also affected his speech, * * * which we call aphasia. It affected the outlying districts, the memory realms and another consequence thereof he attained a certain degree of forgetfulness, or amnesia, lack of concentration." Further, that he was able to walk to the boiler room and appear and act naturally because the seizure was a small "leak" which caused blood to "accumulate outside of a blood vessel and produce pressure symptoms, and the effects then may be noticed minutes or hours later."
Respondent's medical evidence, on the other hand, was that a rupture resulting from straining or lifting the rail would not take the form of a small "leak," but that "with a strain you get a blowout," "when a strain causes a break in the blood vessel, it is usually a large rupture." Upon the hypothesis of the happening in the boiler room of the events related by petitioner's witnesses, Gibbons and Clark, respondent's doctors were of the opinion no seizure, such as claimed by petitioner, had resulted from the alleged lifting of the rail, "if that had caused a break in the blood vessel he would have collapsed then and there." The conclusion given was that the hemorrhage first occurred in the boiler room and was entirely disassociated from trauma or effort, "this man was destined to have a subarachnoid hemorrhage." Cf. Fox v. City of Plainfield, 10 N.J. Super. 464 (App. Div. 1950).
*373 We cannot say from our independent review of the record that the dismissal of petitioner's claim was erroneous. The triers of fact were free to accept respondent's medical testimony and to reject that offered by the petitioner. Respondent's medical evidence in light of the proofs of petitioner's actions in the boiler room supplied ample support for the conclusion reached below that "the cerebral hemorrhage occurred independent of, and wholly unrelated by cause or aggravation, to any compensable accident." Although petitioner's evidence of the happening in the oven room was not contradicted by other eye-witnesses, as of course it could not be since he was alone at the time, that evidence could be properly disregarded by the triers of fact as inherently improbable when considered in relation to all the pertinent evidence in the case.
Affirmed. No costs.