## MAY CENTERS, INC. *v.* PARIS CROISSANT OF ENFIELD SQUARE, INC., ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 371098
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed May 6, 1991

*Updike, Kelly & Spellacy,* for the plaintiff.

No appearance for the named defendant.

*Edward Muska,* for the defendants Anthony A. and Roseann Scussel.

*Blaney & Kissel,* for the defendants William and Elizabeth N. Summers.

SATTER, J. The plaintiff is suing the corporate defendant, Paris Croissant of Enfield Square, Inc., (Paris) to recover unpaid rent, common assessments and attorney's fees pursuant to a lease, and is also suing the individual defendants as guarantors of Paris' liability under the lease.

The facts are as follows. On February 4, 1986, the plaintiff as landlord and Paris as tenant entered into a ten year lease (prepared by the plaintiff) of commercial space at the Enfield Mall, commencing April 15, 1986. The lease provided for a minimum rent, to be paid in advance on the first day of each calendar month, the

first month's minimum rent to be paid at the time of execution of the lease, a percentage rent and various assessments. If Paris failed "to remedy any default in the payment of any sum due under this lease for ten (10) days after notice" the plaintiff could reenter the premises and sublet them, or declare the lease at an end, evict Paris and collect the rent due over the balance of the term of the lease. Paris' failure to pay rent also entitled the plaintiff to charge interest at 12 percent on the unpaid balance, plus attorney's fees incurred to collect back rent. The lease also provided that "[n]o waiver of any default hereunder shall be implied from any omission by either party to take any action on account of such default if such default persists or is repeated . . . . The acceptance by landlord of rent with knowledge of the breach of any of the covenants of this lease by tenant shall not be a waiver or any such breach."

The individual defendants executed a guarantee (prepared by the plaintiff) of the obligations of Paris under the lease. The guarantee provided that the guarantors "absolutely, unconditionally and irrevocably" guarantee to the plaintiff to be liable for full payment of all rent and other charges payable by Paris under the lease, and if Paris defaults, forthwith to pay such rent and charges to the plaintiff, without the necessity of any notice to the guarantors, which they expressly waive. The guarantee was to remain in effect during the first two years of the term of the lease. It further provided: "In the event [Paris] is in default or has failed to perform any of the terms and conditions of the lease as of the expiration of the second (2nd) year of the term of the lease, this [guarantee] shall remain in full force and effect during the entire term of the lease."

Paris, having paid the first month's minimum rent at the time the lease was executed on February 4, 1986, continued to pay the rent around the middle of each

month. Thus, in 1986, the June rent was posted by the plaintiff as having been paid on June 13, the July rent on July 21, the August rent on August 14, the September rent on September 16, the October rent on October 13, the November rent on November 17, and, the December rent on December 11, 1986. Similar patterns persisted through 1987, although in some instances the rent was paid later. In 1988, the January rent was posted as having been paid on January 29, the February rent on February 22, the March rent on March 24, and the April rent on April 25. The two year period of the guarantee expired on April 14, 1988.

The procedure established by the plaintiff was that the tenants of Enfield Mall mailed their rent checks to a lock box in a St. Louis, Missouri bank. Bank employees deposited checks to the plaintiff's account and the next day posted the payment to the plaintiff. The evidence is that Paris' April, 1988 rent was posted to the plaintiff's account on April 25, 1988. That day was a Monday. The court infers the check was received in St. Louis on the previous Friday, or April 22, 1988. The defendant William Summers testified that he could not recall when he mailed the April rent check in Connecticut. It could possibly have been prior to April 15, although he regularly mailed such checks after the fifteenth of the month. This court, taking judicial notice of the mails between Enfield and St. Louis; *Lloyd & Elliott, Inc.* v. *Parke,* 114 Conn. 12, 14, 157 A. 272 (1931); concludes, from all the evidence, that Paris' April rent check was probably mailed on April 20, 1988.

In June, 1987, the defendant Anthony Scussel sold his interest in Paris to Summers; Scussel thereafter ceased to be involved in Paris' business.

In July, 1988, Paris became erratic in its rent payments and the plaintiff started sending notices of

default. Notices were sent in July, 1988, September, 1988, February, 1989, and April, 1989.

In May, 1989, Paris ceased paying rent and gave up its key to the plaintiff. The plaintiff boarded up the premises and eventually relet them in May, 1990. The unpaid rent, charges and assessments under the lease as of May, 1990, amount to $43,945. Interest on the arrearage to the date of trial amounts to $5799.35. Attorney's fees and costs of collection through the trial amount to $6223.70, totaling $55,968.05, which the plaintiff claims as damages.

On the first count against Paris, the plaintiff has proven its claim and is entitled to recover $55,968.05.

On the second count against the individual defendants as guarantors, the question is whether the plaintiff proved the existence of the condition precedent that triggered the extension of the guarantee beyond the initial two years. *Lach* v. *Cahill,* 138 Conn. 418, 421, 85 A.2d 481 (1951). More specifically, did the plaintiff prove Paris was in default in its rent (the only default the plaintiff claims) as of April 14, 1988? This court concludes that the plaintiff did not.

The lease term commenced on April 15, 1986. Paris paid the first month's minimum rent in February, 1986. The plaintiff's records are unclear whether this payment covered the period from April 15 to May 15, 1986, and the plaintiff produced no evidence to clarify this point. What is clear is that starting in June, 1986, Paris paid the rent each month around the fifteenth and the plaintiff accepted it without complaint. Although the lease provided for rent payments on the first of the month, it is a form lease and does not specifically take into account that the lease term started in the middle of the month.

A course of conduct may not only indicate the intent of the parties for the purpose of interpreting ambiguous language in a contract; *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); but also evince a subsequent modification of a contract or an abrogation of specific contract terms. 4 S. Williston, Contracts (3d Ed. Jaeger 1979) §§ 623, 1826. Proof that a contract has been modified is established by a showing of mutual consent; *First Hartford Realty Corporation* v. *Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980); which, in turn, " 'may be inferred from the attendant circumstances and conduct of the parties.' " *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 568, 53 A.2d 383 (1947); *Rowe* v. *Cormier,* 189 Conn. 371, 373, 456 A.2d 277 (1983).

In the present case, the court concludes from the starting date of the lease on April 15, 1986, and from the rent being regularly sent by Paris and accepted by the plaintiff without protest around the fifteenth of each month, that the parties indicated by their conduct their mutual consent to substitute the fifteenth as the due date for the rent.[1] 2 Restatement (Second), Contracts § 279, comment (a).

The lease provides the tenant has ten days to remedy a default in rent payment before the plaintiff can take action. This is consistent with General Statutes § 47a-15a. The court interprets the lease as giving Paris a ten day grace period.

In the present case, Paris mailed the April, 1988 rent on April 20, 1988, and since the plaintiff directed that the rent be sent that way, that is the date the April rent was paid. *Kerin* v. *Udolf,* 165 Conn. 264, 268, 334

---

[1] While the plaintiff sent notice to the tenants at Enfield Mall for payment on the first, these notices were printed by a computer. The court weighed this evidence and on balance decided it did not override the above conclusion.

A.2d 434 (1973). Since the court finds the April, 1988 rent was due on April 15, 1988, Paris was not in default in payment of that month's rent.

Even assuming the due date of the rent was April 1, 1988, and the April rent check was sent on April 20, 1988, while Paris technically may have been in default on April 14, 1988, it was not in default "as of" April 14, 1988, as required by the guarantee for the guarantee to be extended. When the plaintiff received the April rent check, it had several alternatives: (1) refuse the check because it was late and hold Paris in default; (2) return the check and declare it was holding it not as rent but as use and occupancy; (3) accept the check as payment of the April rent. The third is the alternative the plaintiff selected. The plaintiff could not both accept the check and claim a default. The law is clearly stated in the Restatement (Second) of Contracts § 278 (1): "If an obligee accepts in satisfaction of the obligator's duty a performance by the obligor that differs from what is due, the duty is discharged." See also 2 Restatement (Second), Contracts § 278, comment (a). Section 47a-19 of the General Statutes provides that "[a]cceptance of rent with the knowledge that such rent is overdue constitutes a waiver of the landlord's right to terminate the rental agreement for the tenant's failure to pay such rent when it was due." While the statute is not directly applicable, it reveals the general rule that a landlord cannot simultaneously accept a month's rent and claim a default because of late payment.

Particularly, the plaintiff cannot accept the April, 1988 rent, claim no default, (although in subsequent months in 1988 and 1989 the plaintiff sent out notices of default), then initiate this case in November, 1989, a year and one-half later, and demand that this court find Paris in default in April, 1988, so that the guarantee was extended and the individual defendants are obligated for $55,968.05. Rather, this court finds that by the plaintiff's acceptance of the April, 1988 rent on

April 20, 1988, any consequence of the late payment for April was cured. Paris was not in default as of April 14, 1988, and the guarantee was not extended.

The plaintiff argues that the nonwaiver provisions of the lease allow a claim of default despite payment. This court disagrees. The court interprets the language that no waiver of any default shall be implied from omission to take action "if such default persists or is repeated," to mean that a prior default, such as late payment, did not require the plaintiff to excuse and to accept a subsequent late payment, but when the plaintiff accepted the late payment, the default as to that payment was cured. The court interprets the language that acceptance by the landlord of rent with knowledge of the breach of any of the covenants of the lease "shall not be a waiver of any such breach" to mean breaches of covenants other than relating to rent.

In essence, the plaintiff wants this court to construe the lease so that the failure by Paris to pay the April rent *exactly* on April 1, 1988, constitutes a default, which the plaintiff did not waive by accepting the rent, and which extended the guarantee. The established standards of preference in interpreting contracts favor interpretations that are reasonable rather than unreasonable; 2 Restatement (Second), Contracts § 203; practical; *Krall Coal Co.* v. *Century Indemnity Co.,* 139 Conn. 634, 639, 96 A.2d 311 (1953); and consistent with common sense. The plaintiff's desired construction is unconscionable because it creates a lease and guarantee " 'no man in his right senses . . . would make . . . and . . . no honest and fair man would accept.' " 2 Restatement (Second), Contracts § 208, comment (b). This court exercises its perogative to "limit the application of any unconscionable term [of a contract so] as to avoid any unconscionable result." 2 Restatement (Second), Contracts § 208.

Judgment may enter on the first count for the plaintiff against Paris for $55,968.05. Judgment may enter on the second count for the individual defendants.