[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
Introduction and Factual Background
The plaintiff has brought the instant action seeking possession of the premises located at 32 Cooke Street, Plainville, Connecticut, which were leased to the defendants on or about September 22, 1982. The lease was for a period of ten years and contained one five year renewal period as well as an option to purchase. The lease was to commence on May 1, 1983 and required a fixed annual rental of $4,800.00 payable in equal monthly installments of $400.00. On or about February 25, 1985, the lease was amended by increasing the term from 10 years to 20 years commencing November 1, 1984 and by modifying the annual rental payments.
At the inception of the lease, the property consisted of unimproved land, but between 1982 and 1984, the defendants constructed an 18 hole miniature golf course, a paved parking lot, an ice cream parlor and a gazebo. In 1984, John Profita approached the plaintiff to modify the lease in order to build his home and an antique store on the property. As the mortgage lender required a 20 year lease, the parties subsequently modified the lease as set forth above. (Exhibit B). Construction on the 3200 square foot house started in November, 1984 and was CT Page 2676 completed in May, 1985. Mr. and Mrs. Profita presently live in the house and Mrs. Profita operates the store.
 II
Discussion
 A.
This case is brought for nonpayment of rent. While there are four special defenses, the thrust of the defendants' position is that the plaintiff is barred from pursuing this action as he has waived his right to demand timely payment of the rental installments.
1.
There is no question but that the lease requires payment of rent on the first day of each month (Exhibits A; B). There is also no question but that the defendants never made timely payment. Starting with the first check (October 17, 1983), every payment was late. The plaintiff testified as to the tardiness of 21 payments. Based upon that testimony, the following chart was included the plaintiff's brief:
"Check Date Amount Rent Payment For Tardy — ----- ----- ------- ----------------- ------
1 10-17-83 $ 400
2 11-22-83 $ 800 November 1983 22 days
3 1-26-84 $ 800 Dec. 83 Jan. 84 2 months
4 8- 6-84 $ 800 Feb. Mar. 1984 6 months
5 8-27-84 $ 800 Apr. May 1984 4 months
6 6- 5-85 $ 800 June July 1984 12 months
7 5- 8-84 $1200 Aug, Sept, Oct. 84 11 months
 8 8- 8-85 $1200 Nov, Dec. 1984 and 10 months January 1985
9 11-22-85 $2000 Feb. thru June 85 9 months
10 6- 3-86 $2000 July thru Nov. 85 11 months
11 7-24-86 $1200 Dec. 85 thru Feb. 86 8 months CT Page 2677
12 8-22-85 $1200 Mar. 86 thru June 86 5 months
13 5-19-87 $2000 July 86 thru Nov. 86 11 months
14 8-10-87 $2400 Dec. 86 thru May 87 9 months
15 9-30-87 $ 800 June 87 to July 87 3 months
16 11-10-87 $ 800 Aug. 87 to Sept. 87 3 months
17 6-27-88 $2000 Oct. 87 thru Feb. 88 8 months
18 9- 9-88 $1600 Mar. 88 thru June 88 6 months
19 12-30-88 $2400 July 88 thru Dec. 88 5 months
20 6-15-89 $1200 Jan. 89 thru Mar. 89 6 months
21 9- 6-89 $2000 Apr. 89 thru July 89 5 months"
These payments were all accepted without objection. This court is in agreement with the defendants that the written lease provision has been modified by the conduct of both parties. See Baier v. Smith, 120 Conn. 568, 571 (1935). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." Novella v. Hartford Accident Indemnity Co., 163 Conn. 552, 562 (1972) citing Andover v. Hartford Accident Indemnity Co., 153 Conn. 439, 445 (1966). Waiver, of course, involves both knowledge of rights and an intention to not exercise them. Novella, supra. The plaintiff is the largest landowner in Plainville and owns other rental properties. He is not unfamiliar with his rights as a landlord. The acceptance of this modification is further buttressed in the plaintiff's records (Exhibit 2) and his testimony. He was very specific in stating that he never refused a late payment and that he never told the defendants the payments must be made on the first day of the month. The plaintiff had agreed to accept rent when the defendants were able to pay. As strange and unbusinesslike as this may appear, the testimony clearly supports this conclusion. "Waiver, as distinguished from estoppel, is the intentional relinquishment of a known right." Andover, supra, 444.
Recently, Judge Satter thoughtfully discussed this issue in Ma Centers, Inc. v. Paris Croissant of Enfield Square, Inc., 42 Conn. Sup. 77 (1991). He found that payment and acceptance of rent on the fifteenth of each month for almost three years evidenced a modification, by conduct, to a written lease. He stated, at 81, CT Page 2678
 A course of conduct may not only indicate the intent of the parties for the purpose of interpreting ambiguous language in a contract; Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75, 439 A.2d 314 (1981); but also evince a subsequent modification of a contract or an abrogation of specific contract terms. 4 S. Williston, Contracts (3d Ed. Jaeger 1979) sections 623, 1826. Proof that a contract has been modified is established by showing a mutual consent; First Hartford Realty Corporation v. Ellis, 181 Conn. 25, 33, 434 A.2d 314 (1980); which, in turn, "`may be inferred from the attendant circumstances and conduct of the parties.'" Yale Co-operative Corporation v. Rogin, 133 Conn. 563, 568, 53 A.2d 383 (1947); Rowe v. Cormier, 189 Conn. 371, 373, 456 A.2d 277
(1983).
2.
The specific allegations in this case concern the nonpayment of rent due on November 1, 1990. The notice to quit based on that nonpayment was issued on November 13, 1990 and served on November 14, 1990. This court has already indicated that the lease provision requiring payment due on the first of the month has been modified. The plaintiff notes in his brief that the average payment was 7 months late. Notwithstanding the fact that the defendants may have been behind on other payments, this case is based only on nonpayment for November 1990. This court cannot find that the November rent was due on the first of the month.
3.
This court also heard testimony that the defendants failed to pay the tax payments when due. Paragraph eight of the lease requires the tenant to pay municipal taxes as additional rent "within twenty days after the date the tenant is notified thereof by the landlord." The plaintiff testified that he told the defendants he would evict them for a failure to pay taxes.
The plaintiff was very vague about which taxes were not paid. He clearly remembered discussions about taxes due in January 1991, but that is after the notice to quit.
Mr. Profita testified that he did not pay the 1986 CT Page 2679 real property taxes on time. The evidence also indicates that the real property taxes on the October 1, 1987 list with payments due on July 1, 1988 and January 1, 1989 were not timely paid. While there is no evidence as to when the first payment was made, Mr. Profita made the second payment on June 19, 1990. (Exhibits C; 3). For the October 1, 1988 list, with payments due on July 1, 1989 and January 1, 1990 the evidence indicates that Mr. Profita made one payment for both on June 27, 1990. (Exhibit 4). He testified that he would pay the taxes if he had the money, but if he did not, he would pay them when able, with interest. He also testified that he attempted to make a payment on the 1989 taxes in January 1991 but found that Mr. Tinty had made a payment on January 15, 1991. (Exhibit D).
This court notes that 7 paragraph eight requires payment within twenty days after notification. Plaintiff never testified as to a specific notification. Mr. Profita indicated that the tax bills were sent — usually in July. Mrs. Profita testified that she had a conversation with Mr. Tinty in June, 1990 concerning the tax bills, responding that she would pay them immediately.
The plaintiff's complaint makes no mention of failure to pay taxes. Paragraph four does state that the defendant "failed to pay the rent due under the lease since July 1, 1989 and more specifically on November 1, 1990." For the court to allow this phrase to include tax payments under the additional rent clause would be overreaching. A complaint must fairly put the defendant on notice of the claims. . . against him. Farrell v. St. Vincent's Hospital, 203 Conn. 554, 557 (1987). There was, of course, no objection to this testimony by the defendants. Nevertheless, the evidence was such that if the said paragraph did include tax payments, the plaintiff has failed in his proof since payments were made in June, 1990. Indeed, if one construes these tax payments as rent, then the defendants have made rent payments since July 1, 1989.
4.
A third issue in this case concerned the option to purchase the property set forth in paragraph six of the lease. The plaintiff gave the defendant the right to purchase the property for $125,000.00 if the option to renew was exercised, notification was given and a payment of $7,200.00 was made. $2,400.00 was to be paid at the execution of the lease and Mr. Profita indicated he made that payment. While the balance was to be paid by September 1, 1983, Mr. Profita indicated he did not pay it as Mr. Tinty told him it could be paid when he purchased the property. Mr. Tinty did not remember if anything was paid. CT Page 2680
The amendment to the lease contains a handwritten note by the plaintiff to his lawyer, John Bagdasarian, that the document "is an addition 5 year to total 20 year lease before Purchase so he could get a home building mortgage from Bristol Savings Bank. . .") (sic). (Exhibit B). The note is also dated February 25, 1985.
At that time, the defendants were clearly behind in their rental payments (see chart, supra) and obviously not in compliance with the stated payment terms for the option. Yet, it is clear from Mr. Tinty's note, that the option to purchase was still in effect. This note conflicts with Mr. Tinty's testimony at trial in which he indicated that he believed Mr. Profita would merely be utilizing the "free" land opportunity and would move his house at the end of the term.
This court also received a copy of a letter from Attorney Bagdasarian, now deceased, indicating that the option to purchase had terminated. (Exhibit E).
The issue of the option is really no different than the rental payment situation. The relationship of the parties was with the one exception of Atty. Bagdasarian's letter, extremely informal. Mr. Profita testified that he trusted Donald Tinty. It was based on that trust that he built his home and his business with the expectation that at the end of the lease he would purchase the property. Mr. Tinty obviously watched Mr. Profita and his wife build their home. His note to his lawyer acknowledged Mr. Profita's intent.
Returning to Judge Satter's ruling in May Centers, Inc. v. Paris Croissant of Enfield Square, Inc., supra, 83, this court shall "exercise its prerogative to `limit the application of any unconscionable term [of a contract so] as to avoid any unconscionable result.'" 2 Restatement (Second), Contracts section 208. The value of the property, land and buildings, was stated to be worth $500,000.00 by the defendants' appraiser, James Calciano, and $173,500.00 by the plaintiff's appraiser, Thomas J. Ringrose. Mr. Ringrose testified that the present lease was unfavorable and a bad return for the landlord. He also noted that if the nearby Plainville mall is constructed, it would have a favorable effect on this property. The option agreement, of course, allowed the defendant to purchase the property for $125,000.00.
5.
In Fellows v. Martin, 217 Conn. 57, 65 (1991), our Supreme Court reviewed the application of equitable relief in CT Page 2681 nonpayment of rent cases. "Equity abhors . . . a forfeiture." Id. (Other citations omitted). The test, the court stated, was "(1) whether, in the absence of equitable relief one party will suffer a loss `wholly disproportionate to the injury to the other party' . . . and (2) whether the injury to the other party is reparable." Id. 66. This court has already found that the plaintiff waived his right to enforce the timely payment clause. Nevertheless, it is clear that the loss suffered by the defendants would be wholly disproportionate to any injury suffered by the plaintiff — especially in light of the plaintiff's conduct.
 III
Conclusion
This case involves a most unusual leasing agreement. The written specifications pertaining to the payment of rent were totally abandoned by the parties for an informal arrangement of "pay when you are able." A change of circumstances, including the appreciation of property, the construction of a building, unfavorable lease and option terms for the landlord and the potential development of a regional mall caused the landlord to have a change of heart. While the informal terms may not be fair to the landlord he is responsible for their existence. Thus, he may not prevail in this action. Judgment to enter for the defendants.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT