[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above entitled matters were consolidated for trial by notion granted on November 20, 2000 and were heard by the court commencing on July 18, 2002.
The defendant Igor Zakorowortny, in the matter of D R Custom Builders v. Igor Zakorowortny, CV00-0069927S, (hereinafter "Zak"), and the plaintiff, (hereinafter D R) acting through its president Ron Wyda, some time prior to November 25, 1998 had discussions regarding the plaintiff's corporation furnishing the labor necessary to frame a residential dwelling on land of the defendant Zak located in Woodbridge, Connecticut. These discussions led to the plaintiff submitting a proposal for the job. (P. Ex. 2 3). The amended proposal called for progress payments, nine in number, for a total payment of $29,185. The work was to be performed according to the blueprints furnished by Zak (P. Ex. 1) on land described in a plot plan entitled "proposed subdivision Zak Pond", 26 Burnt Swamp Road, Woodbridge, Connecticut, a part of Exhibit 1. The subdivision consisted of several lots off a street or drive called "Crystal Terrace" which ran off Burnt Swamp Road. D R commenced work under the agreement on November 25, 1998. The first item of work, framing the first floor deck amounting to a job price of $4,600 was apparently completed to the satisfaction of Zak and this amount was paid to D R on December 4, 1998. (See P. Ex. 3 and D. Ex. 2-1.) Several more part payments were made by Zak as the work progressed but the plaintiff and the defendant began to experience disagreements over the slow pace of the work as done by D R and the plaintiff's contention that the defendants plans were incomplete and his unanticipated changes to the plans resulting in extra work by D R and an impediment to his cash flow.
D R complained that these actions by Zak caused his crew to be kept from other jobs and he could not use them efficiently on the Zak job. On December 15, 1998 D R sent Zak a bill for extras which CT Page 11868 appears to be $1,830 but which was negotiated down to $1,300 (P. Ex. 4) and which was paid by Zak. Evidence offered by Zak indicates that D R received four checks in payment for its services over the period December 4, 1998 to December 29, 1998 totaling $13,580. (D. Ex. 2, 1-4.) On January 6, 1998 Zak delivered a check for $3,080 which according to the testimony of Zak was to be a progress payment in advance for work not yet done but when Zak discovered that the plaintiff's men were not on the job as promised Zak stopped payment and the plaintiff never received these funds. (P. Ex. 5.) When payment was stopped on this check the plaintiff filed the mechanic's lien which is the basis of this action brought by the plaintiff to foreclose said lien. Before the plaintiff left the job he claimed to have completed items 1, 2, 3 and 7 of the amended proposal (P. Ex. 3) for a total amount due of $15,360. The checks in evidence as Defendant's Exhibits 2-1, 2, 3 and 4 total $13,580. However, this differs from plaintiff's response to the defendant's motion for disclosure (D. Ex. 1) wherein the plaintiff claims it only received four payments, the last of which was on December 31, 1999 in the amount of $3,080 and which the plaintiff claims is the one on which Zak stopped payment. Contrary to Zak's testimony, the plaintiff claims that the check on which Zak stopped payment was in fact due the plaintiff for services already performed and is the basis for its mechanic's lien. The plaintiff at trial on cross-examination testified that his responses to the interrogatories was in error and that it performed work under the agreement totaling $16,660; that it received $13,580 and accordingly it is due the $3,080 as claimed in the mechanic's lien. Zak's claim is that the plaintiff received all payments due it under the schedule and that there is no basis for the claim set out in the lien and that it should be discharged by the court.
The defendant in this foreclosure action notes that the mechanic's lien as filed by the plaintiff claims services being performed at 4 Landmark Terrace pursuant to the agreement. The evidence indicates that the work was done at 7 Crystal Terrace, although Plaintiff's Exhibit 3 notes both addresses with the client being Zak Properties at 4 Landmark Terrace and the job-site being Crystal Terrace. The defendant also claims that the metes and bounds portion of the mechanic's lien described property at yet another location some miles distant from either the job site or the location of Zak Properties. It is as to these inaccuracies and others the defendant claims that the lien should be extinguished for failure to comply with statutory requirements and case law.
The court need not entertain the defendant's claim as to the invalidity of the lien as the court determines from the evidence presented that nothing is due the plaintiff as allowed in the complaint and accordingly the lien is discharged and judgment may enter for the defendant on the CT Page 11869 foreclosure action, CV00-0069927S, D R Custom Builders v. Igor Zakorowortny case.
As to Zak's claim for damages as provided for under Sec. 49-51
— Discharge of Invalid Lien, the court declines to conclude that the filing of the lien in question was filed without just cause. There was a basis, albeit mistaken, on the part of the lienor to believe he was owed money for services performed.
Turning to the allegations set out by Zak in his complaint against D R (Zak Properties, Inc. v. D R Custom Builders, CV00-0072330S) wherein Zak claims that while D R agreed to perform work on Zak's premises, such work was done in an unworkmanlike manner constituting a breach of D R's contract resulting in damages to Zak consisting of expenditures of time and money to remedy defects in the work performed and having to hire others to complete the contract.
The court finds from the evidence presented during the trial that problems were experienced almost from the outset between the parties. D R claimed that the plans and blueprints omitted necessary dimensions; that Zak frequently delayed in making decisions which held up D R employees resulting in lost time, that framing once in place was changed, resulting in duplicating work without extra compensation. Zak claims through his testimony and that of his father that the work was either not done or poorly performed, that specific items were lack of sufficient nailing, improper installation of joists, sills and beam, that D R's onsite site crews failed to show up to work on a regular basis thus causing construction of the residence to be unduly delayed with resultant deterioration of construction material stored on site. Zak also testified to other shortcomings in D R's performances during the court of his examination and cross-examination.
The project came to a halt finally at the end of December or early January 1999 when the parties attempted to reach an accord. In reliance upon D R's promise to resume the work, Zak issued his check for $3,080 (P. Ex. 5) but later stopped payment when D R's crew failed to show up for work as promised. This check according to Zak represented a payment in advance for work yet to be done and his stop payment order came about with the failure of D R to perform. At this point the contract between the parties was ended. Zak subsequently hired other organizations to finish the construction. Zak's father testified that he performed remedial work on the building correcting D R's faulty performance and Zak testified to his efforts to correct shortcomings as well. CT Page 11870
It is significant that Zak was a constant observer of D R's crews on the job and had every opportunity to insist upon workmanlike performance and terminate the contract when he first observed shortcomings but apparently believed that the problems would be worked out as the job progressed. Unfortunately, this did not prove to be the case.
The court concludes that by D R's failure to appear on the job and its removal of working equipment indicating abandonment and Zak's stop payment order in response thereto, the parties by their actions mutually rescinded the contract and accordingly no damages may be awarded to either party. Jazlowiecki v. Nicoletti, 34 Conn. Sup. 670, 673. Yale Co-operative Corporation v. Rogin, 133 Conn. 563, 568.
As to CV00-0072330S — Zak Properties, Inc. v. D R Custom Builders, Inc., judgment may enter for the defendant.
 __________________________ George W. Ripley II Judge Trial Referee
CT Page 11871