GERTRUDE I. OSBORN ET AL. *v.* ALICE J. STEVENS.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 4—decided December 5, 1945.

*Robert A. Wall,* for the appellants (plaintiffs).

*H. Roger Jones,* with whom, on the brief, was *Elbert G. Manchester,* for the appellee (defendant).

DICKENSON, J.   This is an action brought by the heirs and the administratrix of the estate of Charles T. Osborn against the widow and sole heir of Charles M. Stevens, asking for specific performance of an agreement for the sale of real estate made by Stevens on November 14, 1927, and alleged to have been reaffirmed by him from time to time thereafter and continued by his widow after his death.   The defendant admitted an oral agreement by her husband to sell, but claimed that it was unenforceable under both the Statute of Frauds and the Statute of Limitations.   She further claimed that it had been abandoned or rescinded by mutual agreement of the parties some three years after it was

made, and a rental agreement substituted under which Osborn remained in possession. The trial court concluded that Osborn, about three years after the agreement was made, abandoned any attempt to carry it out and from that time until his death occupied the premises as a tenant, and that the contract had been terminated by the mutual agreement of the parties in 1930. It also held that the plaintiffs had failed to establish the agreement alleged with sufficient certainty to warrant a decree for specific performance. The plaintiffs have appealed, assigning error in the finding and conclusions thereon.

The defendant concedes that Osborn went into possession under an agreement to purchase and would have been given title to the property upon payment of the agreed price at any time before the alleged abrogation of the agreement. The main factual issue of the case was the mutual agreement to terminate, and as the determination of that issue is decisive, we confine our opinion to it.

The undisputed facts are as follows: On November 14, 1927, the defendant's husband, Charles W. Stevens, was the owner of land and buildings known as the Colebrook River Inn property which were occupied by a tenant at a monthly rental of $50. On that day, Stevens orally agreed with the plaintiffs' decedent, Charles T. Osborn, to sell the property to him for the sum of $4250. Osborn paid $250 on account of the purchase price and received a receipt for that sum "as payment on purchase of Colebrook River Inn property." It was further orally agreed that payments should be made on the balance of the purchase price to the mutual satisfaction of the parties, and that Osborn was to make repairs and pay the taxes, insurance premiums, and interest in advance on the unpaid balance at the rate of 6 per cent per annum on the first

days of April and October of each year. Osborn, with his family, entered into possession of the property as a home and place of business some time prior to April 1, 1928. The fire insurance policies were indorsed to cover the interest of Osborn as "owner" and Stevens as "mortgagee" as their respective interests might appear, although no mortgage was ever executed between the parties. The property was listed for taxation in the name of Stevens, and after his death, in the name of his estate. The taxes and insurance premiums were paid by Osborn, as was the expense of all repairs and improvements.

On February 20, 1928, Osborn paid Stevens $250, and on April 23, 1928, $500 on account of the purchase price. After crediting these payments, Osborn owed Stevens $3250. No other principal payments were ever made. About three years after the agreement was made, Osborn informed Stevens that he could not carry it out, as he could not raise the money to make the purchase. He continued to occupy the property to the time of his death, to pay the taxes and insurance premiums, to make repairs, and to pay an amount equivalent to that of the interest on the balance of the purchase price, although such sums were not always paid in the amounts and at the time agreed. He also painted the buildings and installed a carbide lighting plant. Upon receiving the payments, Stevens gave Osborn memoranda of receipts of "interest" and so recorded them in his ledger. After the death of Stevens, his widow, the defendant, gave Osborn receipts for "interest" at times, and at other times, receipts for rent. Osborn never carried out his agreement to purchase the property, never offered to pay the balance of the purchase price, and on several occasions after 1930 informed Stevens that he could not purchase the

property. After Stevens' death in November, 1938, the defendant qualified as administratrix of his estate and as such rendered an inventory under oath which included the Colebrook River Inn property. At the foot of the description of the property appeared the statement, "$1,000 paid on same. Equity $3,200.00." The estate was settled in probate and a certificate of descent was recorded in the land records on August 3, 1939, stating that the title to the property was vested in the defendant as widow, sole heir and distributee of the estate. The record title stands in the name of the defendant. Osborn at no time during the settlement of the estate claimed any rights in the property other than as tenant. Upon his death in July, 1942, he left as heirs-at-law and next of kin his widow and three children, who, with one of them as administratrix of his estate, are the plaintiffs in this action. On August 20, 1942, the plaintiffs' attorney called at the home of the defendant, stated he had money that Mrs. Osborn owed her, and asked her to sign some papers. No papers or money was shown to her, and she informed the plaintiffs' attorney that Mrs. Osborn owed her nothing. Thereafter, this action was brought and the plaintiffs deposited $3250 with the clerk of the Superior Court, together with a document entitled "Tender."

The trial court found that, prior to the time when Osborn concededly informed Stevens, some three years after the agreement was made, that he could not carry it out because he could not raise the money, Stevens had had a deed made out for the property, transferring title to Osborn, with a mortgage deed back to him from Osborn according to the terms of the oral agreement; that, because of Osborn's refusal to perform, the deeds were never executed; that thereafter Osborn, with

Stevens' consent, occupied the property as a tenant, paying $97.50, the amount of the semiannual interest, together with the taxes, insurance premiums and cost of repairs, as rent; and that Osborn continued to occupy the premises as a tenant, paying this agreed rental, until the time of his death.

The plaintiffs attack the statements in the finding that, after Osborn said he could not raise the money to make the purchase and could not carry out the agreement, he became a tenant of the property and thereafter, until his death, occupied it as such. In addition to the facts stated, there was considerable oral testimony as to statements made by both Osborn and Stevens bearing upon the relationship between them. The evidence was conflicting but the court could reasonably have found that in 1930, when Osborn said he could not carry out the agreement, Stevens proposed that he occupy the premises as a tenant and pay as rent the various obligations he had assumed in the agreement to purchase; that Osborn agreed to this; that no further effort was made to carry out the agreement to purchase, and that Osborn remained in possession of the property as tenant for the ensuing twelve years to the time of his death. It further could properly have found that, while the payments of $97.50 were described as "interest" in the receipts, they were in fact payments on account of the rent. We can make no change in or addition to the finding, and as it stands it sustains the trial court's conclusion that the contract of sale was terminated by mutual agreement of the parties. "The agreement to rescind or modify need not be express. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties." 6 Williston, Contracts (Rev. Ed.), p. 5171;

*Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 484, 71 Atl. 577.

There is no error.

In this opinion the other judges concurred.