GAER BROTHERS, INC. v. JOSEPH P. MOTT ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued May 5—decided May 31, 1960

*Harry L. Nair,* with whom, on the brief, was *Irwin J. Hyman,* for the appellant (plaintiff).

*H. Meade Alcorn, Jr.,* with whom was *Igor I. Sikorsky, Jr.,* for the appellees (defendants).

BALDWIN, C. J. The plaintiff has appealed from a judgment of the Superior Court ordering a "partition by sale" of a warehouse owned and possessed by the plaintiff and the defendants as tenants in common. The plaintiff began its action in April, 1959, alleging that it owned an undivided half of the property and the two defendants owned the other half. The plaintiff asked for a partition or, in the alternative, a sale, a division of the proceeds, and the appointment of a committee to make the sale. The defendants in their answer admitted all the allegations of the complaint. They moved for a partition by sale. The plaintiff then filed a motion that the court, in any decree ordering a sale of the property, provide that the plaintiff might occupy the

portion of the premises then occupied by it for one year from the date of the sale, upon such terms as the court should prescribe. After a hearing during which both sides offered evidence, the court ordered a sale and appointed a committee for that purpose; it denied the plaintiff's motion for a right to continue its occupancy.

The plaintiff is a wholesale grocer. The defendants operate a chain of supermarkets. On April 23, 1953, the plaintiff and the defendants made an agreement in writing wherein they recited that for their mutual convenience and benefit they would operate their respective businesses from the same building and the defendants would purchase part of their groceries and other merchandise from the plaintiff. They stated further that the plaintiff and the defendants owned, respectively, an undivided half interest in land in East Hartford and that plans had been prepared by architects for the construction of a warehouse and office building. They agreed to put up this building, which was to be financed in part by a bank mortgage and funds, in equal portions, from the plaintiff on the one hand and the defendants on the other; that they would occupy, respectively, portions as designated on the architect's drawings; that they would apportion the charges for payment of principal and interest on the mortgage and the cost of operating the building according to the space occupied, and that the plaintiff would sell to the defendants, at specified prices, merchandise ordered by the defendants and carried by the plaintiff. The agreement went into considerable detail concerning the determination of prices for goods sold and the payments for them as well as the methods of doing business together. The agreement was to run for a term of five years and to be extended

automatically thereafter for one-year terms. It could be terminated at the end of five years, or at the end of any additional term of one year, by giving written notice of an intention to terminate at least 300 days before the end of the term. The agreement then specifically provided: "If this Agreement is terminated at any time, resulting in the parties ceasing doing business with each other as herein provided, the party or parties who shall continue to occupy the premises shall pay rent for the space occupied, into a joint account set up for the purpose of receiving all the rents obtained from said premises. The funds in such account shall be first applied to payment of any and all monies necessary for the operation of the premises, and any balance remaining shall belong to and be divided equally between the parties hereto." The agreement further provided that the amount of rent to be paid into the joint account under these circumstances should, if it is not mutually agreed upon, be determined by an arbitration board consisting of three persons engaged in the real estate business in the Hartford area.

The building was completed in December, 1953. The plaintiff occupied the warehouse portion and half of the office space, the defendants occupying the other half. In October, 1956, the parties stopped the purchase and sale of groceries which had been provided for in the agreement. Since that time, they have been in litigation over an accounting of their respective liabilities and payments. The mortgage has been in arrears since April, 1959. The litigation has been referred to a state referee for arbitration and is still pending. The plaintiff's gross volume of business is about $11,500,000 a year. It serves some 300 customers weekly, and an interruption of this

service would be harmful to it. It is conceded that the only practical method of partition would be by sale.

The plaintiff claims that the agreement of April 23, 1953, established the relationship of landlord and tenant between the plaintiff and the defendants and that this relationship has never been terminated. Therefore, it argues, the court should have made provision for the plaintiff's occupancy of the premises. The court, concluding that there was no relationship of landlord and tenant, denied the plaintiff the right to continue its occupancy for another year.

Our courts of equitable jurisdiction are empowered to order the sale of any estate, real or personal, owned by two or more persons, when, in the opinion of the court, a sale would better promote the interests of the owners. General Statutes § 52-500. Ordinarily, in a partition by sale, the claims of the parties as to their interests in the property are considered in connection with the distribution of the proceeds. *Levay* v. *Levay,* 137 Conn. 92, 95, 75 A.2d 400; *Rentz* v. *Eckert,* 74 Conn. 11, 16, 49 A. 203; *Johnson* v. *Olmsted,* 49 Conn. 509, 518. In the instant case, however, the trial court was faced with the immediate necessity of deciding whether it should order a sale which would be subject to a right of occupancy in the plaintiff for a year in addition to being subject to the bank mortgage. This determination required the court to consider whether the agreement, in effect, created a lease of a portion of the jointly owned premises to the plaintiff. See *Richardson* v. *Monson,* 23 Conn. 94, 98; *Willard* v. *Willard,* 145 U.S. 116, 121, 12 S. Ct. 818, 36 L. Ed. 644; *Hunt* v. *Hazelton,* 5 N.H. 216, 219; note, 151 A.L.R. 388, 390. The issue turns upon a construction of the agreement. Did the parties intend to create a landlord-

tenant relationship in the situation which has eventuated? "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Ives v. Willimantic,* 121 Conn. 408, 411, 185 A. 427; *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 538, 107 A.2d 398; *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.,* 142 Conn. 313, 318, 113 A.2d 863; *Avco Mfg. Corporation* v. *Connelly,* 145 Conn. 161, 169, 140 A.2d 479.

The apparent intent of the parties was to build and finance, jointly, and for their mutual advantage, a warehouse and office building which would be owned and occupied by the plaintiff, doing a wholesale grocery business, and the defendants, doing a retail grocery business. The defendants, owning a chain of retail stores, would require no separate warehouse to furnish a steady supply to their stores, and the plaintiff would be assured of a steady customer. The contract dealt in detail with the method of bearing the cost of owning and operating the building and the prices to be paid for the goods purchased by the defendants from the plaintiff. It is true that the contract provided for a term during which it should be in force, and a method by which its life could be brought to an end. But that is not to say that the parties could not, by their conduct, abandon the contract. *Osborn* v. *Stevens,* 132 Conn. 410, 414, 45 A.2d 160; *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 570, 53 A.2d 383; 6 Williston, Contracts (Rev. Ed.) p. 5171; Restatement, 2 Contracts § 406, comment b. When in 1956 the parties ceased doing business together, the essential purpose of the contract was defeated. The parties had contemplated that possibility and made provision for

it in their agreement by stating that the party or parties who continued to occupy the premises should pay rent into a joint account. Occupancy under these circumstances was a substitute for the advantages of doing business together and sharing, proportionately, all the expenses arising from the joint ownership and occupancy. No term is stated, no fixed amount of rent is mentioned. The agreement had none of the formalities of a lease. See General Statutes § 47-19. The manifest understanding was that if the parties ceased doing business together and either the plaintiff or the defendants, or all of them, continued to occupy the premises, some other arrangement for meeting the obligations of the bank mortgage and the expenses of the building would be necessary. Therefore, provision was made for paying rent. If the amount could not be fixed by agreement, the question could be submitted to arbitration. It does not appear that any attempt at a mutual agreement concerning rent has been made or that the plaintiff has even suggested it.

The plaintiff, by bringing this action for a partition after the parties ceased doing business together, and asking for a partition or a sale, made it possible for the defendants in an answer to admit that a partition was necessary and ask for a sale. Under these circumstances, the plaintiff, showing by its conduct an intent to sever any and all contractual relationships, if any still existed, cannot be heard to complain that the provision in the contract calling for its termination after written notice 300 days before the end of any term had not been met. Had the parties intended that there should be a landlord-tenant relationship after they had ceased doing business together, they could have so provided in clear and unambiguous language. The trial court properly

concluded that the plaintiff had no rights as a lessee and that a sale should be ordered free of any encumbrance apart from the bank mortgage.

There is no error.

In this opinion the other judges concurred.