LAND ENTERPRISES, INC. *v.*
CONSTANCE DORMAN ET AL.
(6234)

DUPONT, C. J., BORDEN and FOTI, Js.

Argued September 14—decision released November 1, 1988

*David A. Reif,* for the appellants (Mordecai Lipkis et al.).

*Donna Nelson Heller,* for the appellee (plaintiff).

*Edward B. Winnick,* with whom, on the brief, were *Roberta J. Lichtenstein* and *Terence S. Hawkins,* for the appellees (defendants).

BORDEN, J. This appeal arises out of a partition action concerning property located at 2 Church Street, New Haven, known as the Malley Building. The appellants, Mordechai Lipkis and Ceasar's Bazaar Limited Partnership (hereinafter referred to as the purchasers), are the successors in interest of Manhattan Lofts, Inc. (Manhattan), the successful bidder at the partition sale ordered by the trial court, *DeMayo, J.* The purchasers subsequently moved[1] for a reduction in the purchase price based on claimed changes and damage to the property occurring subsequent to the execution of the sale. The dispositive issue is whether the court erred by making factual findings without affording the purchasers an evidentiary hearing on their motion. Under the circumstances of this case, we find error.

The critical procedural steps were as follows. The plaintiff's complaint sought a partition of the property. The defendants are various co-owners of the property and other parties with interests therein. On July 2, 1985, the court rendered a judgment ordering a partition by sale. The auction was held on November 18, 1985, at which Manhattan was the successful bidder at a price of $4,015,000. On that date, the court-appointed committee and Manhattan entered a bond for deed. Paragraph three of the bond for deed stated that "the premises are being sold 'as is' without warranties, either expressed or implied, as to the condition of the premises or the use to which they may be

---

[1] The actual movant was Manhattan, the original successful bidder. The purchasers were subsequently substituted both as movants of the motion for reduction in purchase price and as purchasers of the property. We refer herein to the purchasers as the movants, and to the plaintiff and the defendants as the sellers.

put, and on 'Buyers' own information and knowledge and *not* upon any representations or comments, either oral or written, made by the 'Seller.' " (Emphasis in original.) The bond for deed called for a closing within thirty days of the approval of the sale by the court. The court approved the sale on December 18, 1985. Pursuant to various motions and stipulations, the closing was not held until December 18, 1986. On December 15, 1986, however, Manhattan filed a motion for reduction in the purchase price, claiming that, subsequent to the execution of the bond for deed, the property was damaged in several significant respects, rendering it in an other than "as is" condition as required by the bond for deed of November 18, 1985.

This motion came before the court on February 9, 1987, when the parties agreed that the committee could distribute the proceeds of the sale except for $400,000, which would be held in escrow by the committee subject to the court's determination of the purchasers' motion. At that proceeding, the court ordered the purchasers to file their brief by February 17, 1987, and ordered the other parties to file their briefs by February 24, 1987. The court then stated: "And at that time, when the court receives that—I take it you all—you will want to be heard as well?"

At that point the following colloquy took place:

"Mr. Winnick [counsel for various of the owners]: And I think if Your Honor reaches the question on the facts [Mr. Reif] would have the obligation of producing evidence for the court.

"The Court: . . . Now just so we don't misunderstand anything. Are the parties expecting to be heard regardless of what the court does with the briefs or do you want to be heard only if I get by the first hurdle?

"Mr. Reif:[2] Well, I think it's probably a factual basis that has to be laid either way before Your Honor reaches a determination on the briefs. I think that in addition to the legal position there are some underlying facts which will have to be heard one way or the other as to . . . .

"The Court: Well, your brief will outline—will have to outline some of the factual basis for liability.

"Mr. Reif: That's understood, Your Honor, but I assume that some of those factual issues will probably be put in dispute and therefore there's going to have to be a record laid as to those factual issues, regardless of whether Your Honor would ever reach the issue of what amount should be offset. The legal issue of whether anything should be offset requires a factual . . . .

"The Court: Let's take that issue first. Is that the one you want to be heard on? Do you expect to be heard on?

"Mr. Reif: That's one that I would hope to be heard on, yes.

"The Court: All right. So then the briefs are merely preliminary to a hearing either way?

"Mr. Reif: That's right. That's how I would view it, Your Honor."

After the briefs were filed, the case next came before the court, for oral argument, on April 27, 1987. At the outset of this proceeding, the purchasers' counsel stated: "As I understand the scope of today, the ques-

---

[2] Although the transcript of the tape recording of the proceedings identifies this speaker as "Mr. Beatty," who was the committee, the purchasers point out, and the committee and the other parties do not dispute, that it was actually Mr. Reif, the purchasers' counsel, who was speaking. This also is apparent from the substance of the colloquy.

tion is whether, assuming that the plaintiff were about to prove a set of facts falling within the realm and allegations of the complaint[3]—would it have established at that point a legally sufficient claim as to either of the two issues which have been raised. Of those two issues, the primary issue is the question of what is meant by 'as is' in connection with the sale of the property."

Thereafter, the court held oral argument on the purchasers' motion. At the end of that argument, the court stated "I just wanted to sum up. I think there are three possibilities as I see them. I think I can take three positions here. I can decide the motion in its entirety or I can grant it in its entirety. I can break it down and find that I can decide part of it on whether I have an evidentiary hearing or I can decide I can't do anything without an evidentiary hearing." Counsel for the purchasers responded: "I think that is right. I respectfully submit the most likely of those is the fourth because we clearly have a difference of testimony as to whether there was a representation that the material would be removed, and it seems to me we clearly have a set of different factual interpretations as to what Mr. Tyler [counsel for Manhattan] meant when he said that Mr. Lipkis was agreeing that—to take over as a caretaker, a term that was used to provide maintenance which is a term that was used but not to do capital replacement which is a term that was used."

Thereafter, the court rendered a written memorandum of decision addressing the two categories of damages claimed by the purchasers: (1) $269,300 in expenses incurred in removing certain personalty from the premises and in removing the adhesive material from the floor where carpeting was removed; and (2) approximately

---

[3] Despite the incorrect designation of "plaintiff" and "complaint," it is apparent that the attorney was referring to the movants and to the motion before the court.

$100,000 incurred in making certain necessary repairs to the building, namely, the repair of holes in the floors, roof and columns, and electrical and elevator repairs. With respect to the first category, the court made a number of factual findings, including a finding that the carpeting was personalty, not a fixture, and a finding that the purchasers were looking to the purchaser of the carpeting, not to the sellers, for the removal of the carpeting. The court concluded from "this factual background" that there was no legal basis to charge any owner or the committee with responsibility for the damages claimed. The court also made a number of factual findings with respect to the second category of claimed damages, including the finding that, by stipulation on January 13, 1986, Lipkis became not only the caretaker of the building but "was considered the owner in all but the legal sense." The court concluded that, assuming the alleged defects existed, the purchasers either accepted them as part of the structure of the building as of November 18, 1985, or were responsible for them because they occurred while Lipkis was in control of the building. Finally, the court concluded that the purchasers were estopped from raising both categories of claims. This conclusion was based on the court's findings that the purchasers, in securing extensions of the closing date, had implicitly represented to the sellers that they would pay the full purchase price, and that the sellers relied thereon to their detriment by waiving defaults by the purchasers. The court denied the purchasers' motion, and rendered a supplemental judgment accordingly. This appeal followed.

The purchasers' principal claim is that the trial court erred by making critical factual determinations without affording them an evidentiary hearing. We agree, and we find this issue to be dispositive.

We first address, however, two procedural claims that the sellers argue bar consideration of the pur-

chasers' principal claim. These are (1) that the purchasers cannot complain of a lack of an evidentiary hearing on their claims because, had they considered such a hearing to be necessary, the proper course would have been to institute a separate civil action, and (2) that the purchasers did not preserve this claim for appeal by noting an exception or by raising it with sufficient clarity in the trial court. We disagree.

A partition action is equitable in nature. See *Gaer Bros., Inc.* v. *Mott,* 147 Conn. 411, 415, 161 A.2d 782 (1960). General Statutes § 52-495 provides for partition of property, owned by more than one person, by "[c]ourts having jurisdiction of actions for equitable relief"; General Statutes § 52-500 (a) provides for the sale of such property pursuant to "[a]ny court of equitable jurisdiction"; and General Statutes § 52-502 (a) provides that the court "may make any order necessary to protect the rights of all parties in interest and to carry the sale into effect." Once a judgment of partition by sale has been rendered, the "[e]quities between the parties not involved in that judgment are to be determined by a supplemental judgment after the land has been sold and the proceeds paid into court." *Neumann* v. *Neumann,* 134 Conn. 176, 178, 55 A.2d 916 (1947). These principles provide more than ample authority to support the purchasers' motion for a reduction of the purchase price within the confines of the partition action. Furthermore, this was an eminently sensible procedure, because it conserved judicial resources by avoiding delay and multiplicity of litigation.

The sellers' argument that the purchasers failed to preserve their claim for appeal is equally unavailing. The fact that the purchasers failed to take a talismanic "exception" to the court's procedure is of no moment. The rules of practice require a formal exception in only two circumstances: (1) on an evidentiary ruling; Prac-

tice Book § 288; and (2) on a jury instruction not otherwise covered by a proper request to charge. Practice Book § 315.

Thus, the only requirement the purchasers had to fulfill in order to preserve their claim for appeal was that the claim was "distinctly raised at the trial or arose subsequent to the trial." Practice Book § 4185. The record is clear that the purchasers claimed throughout the proceedings on their motion that they were entitled to an evidentiary hearing regarding any disputed factual issues. Indeed, even at the end of the oral argument on their motion, when the court suggested several procedural possibilities, one of which did not involve an evidentiary hearing, the purchasers claimed that such a hearing was required because of disputed factual issues. Thus, the purchasers' claim was "distinctly raised at the trial," within the meaning of Practice Book § 4185.

We return, therefore, to the purchasers' principal claim, namely, the lack of an evidentiary hearing to resolve factual disputes underlying their motion for reduction in the purchase price. We conclude that, under the circumstances of this case, the court erred by making factual determinations in the absence of the requested evidentiary hearing.

It is clear that the parties contemplated a procedure whereby the court would assume the truth of the facts claimed to be provable by the purchasers and would rule on the legal sufficiency of the purchasers' claims, as if ruling on a motion to strike. See Practice Book § 152 (1). The purchasers, at least, did not contemplate and did not submit to a procedure whereby the court would find controverted facts without an evidentiary hearing.

It is fundamental that when issues of fact are disputed, due process requires an evidentiary hearing,

with the opportunity to present evidence and cross-examine witnesses. *Nelson* v. *Nelson,* 13 Conn. App. 355, 367, 536 A.2d 985 (1988); *Lampasona* v. *Jacobs,* 7 Conn. App. 639, 642–43, 509 A.2d 1075 (1986). Here, the court made a number of critical factual findings based only on the briefs of the parties, supplemented by its own knowledge of the file derived from its continued handling of the case from its inception.[4] Among those critical factual findings were that the carpeting was personalty, that the purchasers were not looking to the sellers for removal of the carpeting, that the purchasers either accepted the claimed defects or were responsible for them by virtue of Lipkis' control of the building after January 13, 1986, that the stipulation of that date meant Lipkis was thereafter to be treated as the owner of the property, and that the purchasers were estopped from asserting their claims. Our review of the record persuades us that these factual issues, among others, were vigorously disputed by the purchasers, and that they were prepared to offer evidence in connection therewith. The court's decision impermissibly cut that process short.

We recognize that the court, in a laudable attempt to save judicial resources, attempted to fashion a procedure which would, if possible, obviate the necessity for an evidentiary hearing. Under the circumstances here, however, that simply was not possible. We also recognize that Judge DeMayo also laudably attempted to maintain continuity and to avoid delay by retaining the case even after he left the judicial district of New Haven, and that in deciding the purchasers' motion he employed the knowledge of the case that he had acquired in that process. We do not question that, under such circumstances, he was entitled to employ much of that

---

[4] The case was handled from its inception to its conclusion by Judge DeMayo, who took the case with him even after he left the judicial district of New Haven, where it had originally been filed.

knowledge. Where factual disputes remained that were relevant to the motion before the court, however, it was error to resolve those disputes without affording the purchasers an evidentiary hearing on their claims.

There is error, the supplemental judgment is set aside and the case is remanded for an evidentiary hearing on the motion for a reduction in the purchase price.

In this opinion the other judges concurred.