[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Norris Jones brings this action against defendant Julia Roane for a partition or sale of the real property located in Hartford known as 29-31 Kent Street. The defendant counterclaims and demands an order transferring all legal interest in the property to herself. Both parties demand, in the alternative, an accounting. A trial was held to the court at which both parties and other witnesses appeared and testified. Based on that evidence and stipulations of the parties, the court makes the following findings and orders:
FACTS
The defendant and Dwight Jones, brother of the plaintiff, acquired the property in question in June 1966 by warranty deed as tenants in common. The purchase price was $24,500. of that, $4,166.95 was paid in cash, and the balance was financed by assumption of an existing mortgage and a purchase money second mortgage from the sellers. Although the testimony was conflicting as to the source of the cash payment, the court finds that the defendant ultimately paid the entire amount.
The premises consist of a three family residence with a parking area sufficient for all tenants. The premises are in need of considerable repairs, but all of the dwelling units are habitable and, in fact, are presently occupied. Two witnesses gave expert opinions as to the present fair market value of the property. These ranged from $88,000 to $125,000. The appraiser who was able to conduct the most thorough examination of the premises, including the inside of the building, set the current value at $88,000 to $90,000. In addition to citing sales of comparable rental properties in 1989 which generally support her CT Page 1356 evaluation, her report describes the present market for such properties as "soft market/over supply." Although the appraiser did not specifically cite the value of future rental income, the properties to which she compared the subject property were all three family buildings, and the court considers that the rental factor was adequately included. On the basis of this evidence, the court finds that the lower range of valuation more accurately represents the property's true market value and finds it to be $90,000.
The defendant has occupied an apartment in the building since the date of closing. In 1967, the defendant gave birth to Dwight Jones' child, who also lived at the premises with her mother for many years. Dwight Jones also lived at the premises until May 1970. Although the defendant and Dwight Jones were married to other people at the time they purchased the premises together, they had an obvious close personal relationship and the defendant, at least, expected that they would marry in the future. In connection with the management of the property, the defendant and Dwight Jones opened a joint checking account. Dwight Jones testified that the defendant and he agreed that they would share equally in the income and expenses generated by the property. The defendant's testimony was equivocal on this point, but her pretrial admissions, admitted as evidence in the trial, supports Dwight Jones' testimony. The court finds that the defendant and Dwight Jones intended that they would each own an undivided fifty percent interest in the property as tenants in common and that they would share equally in the expenses incurred and income derived from the property. Notwithstanding their agreement, Dwight Jones never contributed to the expenses nor did he receive any income from the property. The defendant assumed all responsibility for managing the property, including finding tenants, collecting rents, paying expenses, mortgage payments, taxes, repairs, and eviction of nonpaying tenants. The defendant has performed these and other responsibilities from the time the property was first acquired by her to the present.
In May 1970, Dwight Jones conveyed by quitclaim deed all his right, title and interest in the property to his brother, Norris Jones, the plaintiff in this action. The plaintiff's physical connection to the premises was even more remote than was his brother's. Testimony of the parties was inconclusive as to the reasons, but the plaintiff never lived in the premises after acquiring title. He says he attempted to move in but the defendant refused him and called the police to keep him out. He never contributed anything to the maintenance or purchase of the building. The defendant testified that once she requested that he join with her in purchasing a new furnace but he refused.
Since the date she first became a joint owner of the CT Page 1357 premises in 1966, the defendant has assumed responsibility for all financial transactions relating to the property. During the course of the trial, she furnished the following accounting of amounts expended and debts incurred by her in connection with the property.
EXPENSES ACQUISITION COSTS
 Paid Down Payment $ 4,166.95 Mortgage, Soc. for Savings (incl. interest) 16,936.00 Mortgage, Purchase money (incl. interest) 13,636.80 Property Taxes 15,885.26 Utilities, Repairs, Insurance 1,600.00 ---------- $52,275.01
 Owed (liens) Met. Water District $ 1,829.27 Heating Oil (2 companies) 1,889.50 Property Taxes 14,091.67 ---------- $17,810.44
 Total Expenses, Acquisition Costs Paid by Defendant and Owed . . . $70,035.45
In addition to the expenditures and charges set forth above, the defendant also claims credit for the time and effort she has expended in managing the property. She testified that this responsibility consumed at least five hours per week and that her rate of pay at her regular employment in administrative work for the federal government is approximately $10.00 per hour. The court finds that amount, $50.00 per week, to be reasonable compensation for her responsibilities in managing the subject property. The court further finds that she has performed work for 1252 weeks from the time the defendant acquired the property to the present, August 1, 1990. Accordingly, the value of her services in behalf of the property is $62,600. This amount, when added to the other expenses incurred by the property, produces a total of $132,635.45, representing total expenses and acquisition costs paid or incurred by the defendant in behalf of the property and the value of her services rendered.
INCOME AND CAPITAL
After considerable research and questioning on direct and cross examination, the defendant testified and the court finds that total rents received over the years amounted to $52,500. This figure does not include any rent from the defendant for the CT Page 1358 apartment occupied by her over the years. The plaintiff argues that she should be charged the fair rental value for such occupation. The court disagrees. It is clear that from the beginning, no one involved intended that the premises should be purely rental property. The defendant has always occupied one or another of the apartments, and the plaintiff's predecessor in title, Dwight Jones, lived there for a time. Although there was testimony from the plaintiff that the defendant prevented him from occupying an apartment, he clearly had the right to do so (subject to the preexisting rights of tenants). There was no evidence that the plaintiff ever attempted legally to enforce his right of possession. Since the plaintiff and the defendant had equal rights to possession and since the defendant's occupancy of one of the apartments did not interfere with the plaintiff's right to possession of an equal share, the defendant is not chargeable for the rental value of the apartment she occupied.
As indicated above, the current fair market value of the property is $90,000.
PARTITION OR SALE
A partition action is equitable in nature; Conn. General Statutes 52-495; Coxe v. Coxe, 2 Conn. App. 543, 549 (1984) citing Gaer Bros., Inc. v. Motta, 147 Conn. 411, 415 (1960). In an equitable proceeding the court may consider all relevant circumstance to ensure that complete justice is done. The balancing of the equities in a particular case is a matter for the discretion of the court. Reynolds v. Ramos, 188 Conn. 316,320 (1982). The court is not bound by a formula but is free to fashion relief "moulded to the needs of justice." Hall v. Dichello Distributors, Inc., 6 Conn. App. 530, 540 (1986).
Sections 52-495 and 52-500 of the Connecticut General Statutes permit a tenant in common to petition the Superior Court for an order partitioning the property, or the court may order the sale of the property if that will "better promote the interests of the owners." In the instant case, a partition of the property would be plainly impractical and would not be in the best interests of either party. The premises consist of a single building with garage on a small (5000 sq. ft.) city lot. Any physical division of the property which would give either party a useful portion would either destroy the whole or give the other party a portion too small to be usable. A sale of the property in this case, however, conflicts both with the clear preference of our law and with equitable considerations which are peculiar to the case. The law favors partition over sale. Delfino v. Vealencis, 181 Conn. 533, 538 (1980). That case requires the court to give due consideration to the fact that the defendant has been in actual and exclusive possession of a portion of the CT Page 1359 property for a substantial period of time; that she has made it her home; and that she derives a portion of her livelihood from the property. Id. at 543. In addition, this court notes that the plaintiff has notify distanced himself from any of the operations or maintenance of the premises but has refused to cooperate in performing those responsibilities. Thus, a sale of the property in order to provide a sum of money to compensate the plaintiff for the value of his interest in it would result in a disproportionate and irreplaceable loss to the defendant, an obviously inequitable result. On the other hand, a partition of the property is physically not feasible.
For all of the reasons set forth above, the court concludes that neither a partition nor a sale of the property would be acceptable under the law or in equity. Nevertheless, the parties have real legal and equitable interests which, by their pleadings and in arguments to the court, they seek to have divided. They are each entitled to a remedy that is appropriate to their respective interests. As indicated above, although both parties seek damages, the major thrust of their claims is equitable in nature. Section 52-22 of the statutes provides
 The superior court in the exercise of its equitable jurisdiction may pass the title to real property by decree, without any act on the part of any party holding title to the real property, when in its judgment it is the proper mode to carry the decree into effect. When the decree is recorded in the land records in the town where the real property is situated, it shall be, while in force, as effectual to transfer the real property as the deed of the party or parties holding title.
Such a decree transferring the plaintiff's title in the premises to the defendant would be appropriate in this case provided the plaintiff is compensated monetarily for his share. This would permit the defendant to remain in her home, where she has lived for over two decades, and retain the property which she has worked to preserve. Furthermore, the transfer of title to the defendant coupled with a money award to the plaintiff would be similar in result to an unequal physical partition and an equalizing money award, a result which is specifically sanctioned under our law. Delfino v. Vealencis, supra n. 7.
The money award to which the plaintiff is entitled is calculated on the basis that he is entitled to a one-half share of the rents and profits earned to date and a one-half share of the equity of the property, based on its present fair market value. He must be charged with one-half the expenses and CT Page 1360 acquisition costs. Accordingly, the amount to which he is entitled is $4,932.27, as set forth below:
 Total Rents Received . . . . $52,500 Total Fair Market Value . . . 90,000 ------- Total Value to Date . . . . 142,500 Plaintiff's 1/2 share . . . . . . . . . $71,250.00
 Total Expenses. . . . . . . .(132,635.45) Plaintiff's 1/2 share . . . . . . . . . ($66,317.73) ------------ Plaintiff's Net Money Award $ 4,932.27 ------------
For all of the reasons set forth above, the court awards damages to the plaintiff on the complaint in the amount of $4,932.27 and grants judgment to him accordingly. Further, the court decrees pursuant to Conn. General Statutes 52-22, and in accordance with the counterclaim, that the plaintiff's interest in the real property located in Hartford and known as29-31 Kent Street is hereby transferred to the defendant, and judgment on the counterclaim is accordingly granted to her. Costs and fees shall be borne equally by the contesting parties.
JOHN P. MALONEY, Judge