[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Leonard Redick brings this action against defendant Carolyn Jackson and various lienholders for a partition or sale of the real property located in Hartford known as 131 Salisbury Street. The defendant counterclaims and demands an order transferring all legal interest in the property to herself. The counterclaim includes counts alleging intentional infliction of emotional distress, assault, and failure to pay child support. Motions to strike or dismiss those counts were denied by this court (Satter, J.) prior to trial.
In 1974, the plaintiff and defendant resumed a relationship which had started when both were in high school together. The defendant was married and had two children, but was separated from her husband, Charles Jackson. The plaintiff and the defendant moved in together and lived in rented apartments for a time. In 1978, they purchased the property which is the subject of this action. The entire purchase price was financed by a mortgage guaranteed by the Veterans' Administration. The parties took title as joint tenants with right of survivorship. They lived together in the premises until April 1988.
Although there was some conflict in the testimony, the court finds that the basic agreement between the parties was that they would share equally in the ownership of the subject property and in the financial and nonfinancial burdens of maintaining the household, including the expenses directly related to the subject property. The court also finds that they adhered to this agreement during the time they lived together. This finding takes into account the fact that each of the parties was from time to time unemployed so that their respective financial contributions over those years were uneven. However, until the plaintiff left in April 1988, each CT Page 366 one contributed substantially equally of time, money and effort to the household, including maintenance of the real property.
During the time the parties lived together, their relationship was stormy and chaotic. The defendant divorced Charles Jackson, and she and the plaintiff had two children together; Tony, born in 1979, and Ebony, born in 1982. There were many quarrels, mutual allegations of physical and mental abuse, and mutual accusations of illegal drug activity. The deterioration in their relationship reached a climax in April 1988, when the defendant obtained an order from this court (Kaplan, J.) enjoining the plaintiff from living in the premises pursuant to Conn. Gen. Stats. 46b-15. The court issued that order upon an affidavit by the defendant in which she states that the plaintiff physically abused her and their children. The plaintiff never returned to live in the household thereafter, nor has he pa id anything toward the maintenance of the property since that date.
In September 1988, the defendant obtained a judgment against the defendant in this court (Sullivan, J.) which determined his paternity of Tony and Ebony and which ordered him to pay a total of $90 per week as support of the children. He has never paid any of that support. The amount of the unpaid child support owed by the plaintiff is $10,530.
The parties have stipulated that the present fair market value of the subject property is $108,500. There are two mortgages against the property, totalling $31,377. There are two judgment liens pertaining solely to the plaintiff totalling $3400. There is a state welfare lien on the property, of which the sum of $9,032 pertains to the children of the plaintiff and defendant.
In the fifth count of the counterclaim, the defendant claims damages for the alleged intentional infliction of physical and emotional abuse by the plaintiff. Specifically, she claims that she was forced to resign from her job at the Hartford Insurance Group as a result of Tony's emotional problems and the "bad situation at home", all caused by the plaintiff's conduct. On cross examination, however, the defendant admitted that the plaintiff's conduct was only "partially" the cause of her resignation, and she cited other reasons, including chronic bronchitis and hypertension, as the basis for the termination of that employment. This testimony is supported by the defendant's personnel file at The Hartford (defendant's Exhibit 4) which contains several statements blaming her poor attendance on her physical condition. The court finds that the defendant did not prove by a preponderance of the evidence that the defendant's conduct was the proximate CT Page 367 cause of the termination of her employment.
A partition action is equitable in nature; Conn. General Statutes 52-495; Coxe v. Coxe, 2 Conn. App. 543, 549 (1984) citing Gaer Bros., Inc. v. Motta, 147 Conn. 411, 415 (1960). In an equitable proceeding, the court may consider all relevant circumstances to ensure that complete justice is done. The balancing of the equities in a particular case is a matter for the discretion of the court. Reynolds v. Ramos, 188 Conn. 316,320 (1982). The court is not bound by a formula but is free to fashion relief "molded to the needs of justice." Hall v. Dichell Distributors, Inc., 6 Conn. App. 530, 540 (1986).
Sections 52-495 and 52-500 of the Connecticut General Statutes permit a joint tenant to petition the court for an order partitioning the property, or the court may order the sale of the property if that will "better promote the interest of the owners." In the instant case, a partition of the property would be plainly impractical and would not be in the best interests of either party. The premises consist of a single building on a small (8000 sq. ft.) city lot. Any physical division of the property which would give either party a useful portion would either destroy the whole or give the other party a portion too small to be usable. A sale of the property in this case, however, conflicts both with the clear preference of our law and with equitable considerations which are peculiar to the case. The law favors partition over sale. Delfina v. Vealencis, 181 Conn. 533, 538 (1980). That case requires the court to give due consideration to the fact that the defendant has been in actual and exclusive possession of the property for almost three years and that she has made it her home. Id. at 543. In addition, the court notes that the property is the home of the parties' two minor children. The court further notes that the plaintiff has contributed nothing to the maintenance or financing of the property for almost three years since April 1988. In his testimony, the plaintiff sought to justify that neglect by the assertion that he was forced out of the house by the plaintiff. There was ample evidence, however, that his own conduct was the cause of his eviction. Furthermore, his absence does not wholly excuse his failure at least to contribute to the mortgage payments, especially since he is now claiming a share of the equity in the property. The court concludes, therefore, that a sale of the property in order to provide a sum of money to compensate the plaintiff for the value of his interest in it would result in a disproportionate and irreplaceable loss to the defendant, an obviously inequitable result. On the other hand, a partition of the property is physically not feasible.
For all of the reasons set forth above, the court CT Page 368 concludes that neither a partition nor a sale of the property would be acceptable under the law or in equity. Nevertheless, the parties have real legal and equitable interests which, by their pleadings and in arguments to the court, they seek to have divided. They are each entitled to a remedy that is appropriate to their respective interests. As indicated above, although both parties seek damages, the major thrust of their claims is equitable in nature. Section 52-22 of the statutes provides:
 The superior court in the exercise of its equitable jurisdiction may pass the title to real property by decree, without any act on the part of any party holding title to the real property, when in its judgment it is the proper mode to carry the decree into effect. When the decree is recorded in the land records in the town where the real property is situated, it shall be, while in force, as effectual to transfer the real property as the deed of the party or parties holding title.
Such a decree transferring the plaintiff's title in the premises to the defendant would be appropriate in this case provided the plaintiff is compensated monetarily for his share. This would permit the defendant and the children to remain in their home. Furthermore, the transfer of title to the defendant coupled with a money award to the plaintiff would be similar in result to an unequal physical partition and an equalizing money award, a result which is specifically sanctioned under our law. Delfino v. Vealencis, supra, n. 7.
The money award to which the plaintiff is entitled is calculated on the basis that he should receive a one-half share of the equity of the property, based on its present fair market value. He must be charged with the full amount of liens imposed against him individually and one-half the amount of liens and expenses which are the joint obligations of him and the defendant. These charges are the judgment liens against the property held by Morton N. Katz and Wallace Barnes E.C.U., Inc., in the respective amounts, of $2500 and $900.[1] The plaintiff is also charged with the amount he owes for child support, $10,530. He argues, that this obligation is unrelated to the subject matter of the partition suit and that, therefore, it is not a justifiable charge against his interest in the property. That argument, however, overlooks the actual circumstances of this case. The plaintiff's child support obligation was imposed by a previous judgment of this court, and the plaintiff has utterly refused or neglected to comply with it. The mother and child involved live in the house which CT Page 369 is the subject of this partition suit. Since the defendant mother has no other assets, the plaintiff's money judgment in this suit may well result in a lien against her interest in the property. This would further jeopardize the ability of the mother and children to occupy their residence. In effect, the plaintiff asks the court for a judgment which permits him to withdraw his money from the property and which ignores a previous judgment of the court to the same extent as he has ignored it. To do so would make a mockery of the law. The same reasoning applies to the lien against the property in favor of the state for payments made in aid to dependent children. Since both parents are obligors on that indebtedness, however, the plaintiff should be charged with only one-half the amount pertaining to his children. This is $4500.
Finally, the plaintiff must be charged with one-half the expenses of maintaining the property since the time he left it in April 1988. As indicated above, the court finds that the parties initially agreed in substance to an equal division of responsibility for the property and that agreement was fulfilled until April 1988. After that date, the plaintiff contributed nothing. The defendant's only evidence of expense subsequent to that date related to the monthly payment on the first mortgage, taxes and insurance. She testified that that expense was $403 per month over a period of thirty-four months since April 1988. However, in her trial brief she claims $351 per month. For the 34 month period April 1988 to January 1991, the total is $11,934, of which the plaintiff's one-half share is $5967.
To summarize, the plaintiff's share of the equity in the property is calculated as follows:
 Fair Market Value. . . . $108,500 Less Mortgages . . . . . 31,377 Total Equity . . . . . 77,123 Plaintiff's 1/2 Share . . . . . . . . . . $38,562
 Katz and Barnes liens . . . $3,400 Unpaid child support . . . 10,530 Plaintiff's 1/2 share ADC lien 4,500 Plaintiff's 1/2 share mtg. payments 5,967 Total charges . . . . . . . . . . . . . . ($24,397) Total Due Plaintiff . . . . . . . . . . . $14,165
For all of the reasons set forth above, the court awards damages to the plaintiff on the complaint in the amount of $14,165 and grants judgment to him accordingly. Further, the court decrees pursuant to Conn. General Statutes 52-22, and in accordance with the counterclaim, that the plaintiff's interest CT Page 370 in the real property located in Hartford and known as 131 Salisbury Street is hereby transferred to the defendant, and judgment on the counterclaim is accordingly granted to her. Costs and fees shall be borne equally by the contesting parties.
MALONEY, J.